# EXHIBIT "A"

# United States Department of the Interior

### NATIONAL PARK SERVICE
Yosemite National Park
P. O. Box 577
Yosemite, California 95389

IN REPLY REFER TO:
L7615(YOSE-PM)

**Memorandum**

**To:**        Ruth Middlecamp, Project Manager, Yosemite National Park

**From:**      Superintendent, Yosemite National Park

**Subject:**   NEPA and NHPA Clearance: 2012-043 Programmatic Special Use Permit - Hang Gliding (43657)

The Executive Leadership Team has reviewed the proposed project and completed its environmental assessment documentation, and we have determined the following:

- There will not be any effect on threatened, endangered, or rare species and/or their critical habitat.
- There will be no historic properties affected.
- There will not be serious or long-term undesirable environmental or visual effects.

The subject proposed project, therefore, is now cleared for all NEPA and NHPA compliance requirements as presented above. Project plans and specifications are approved and construction and/or project implementation can commence.

For the proposed project actions to be within compliance requirements during construction and/or project implementation, the following mitigations must be adhered to:

- No mitigations identified.

For complete compliance information see PEPC Project 43657.

*Don L. Neubacher//*
Don L. Neubacher

Enclosure (with attachments)

cc: Statutory Compliance File

> *The signed original of this document is on file at the Environmental Planning and Compliance Office in Yosemite National Park.*



**National Park Service**
**U.S. Department of the Interior**

**Yosemite National Park**
**Date: 03/26/2013**

# Categorical Exclusion Form

**Project:** 2012-043 Programmatic Special Use Permit - Hang Gliding
**PEPC Project Number:** 43657
**Project Description:**

This five year programmatic Categorical Exclusion (CE) will cover Special Use Permits (SUP) authorizing the Yosemite Hang Gliding Association (YHGA), a nonprofit group, to conduct noncommercial hang gliding activities in Yosemite National Park. This programmatic CE will cover SUPs issued to the organization beginning on June 1, 2013.

SUPs are issued to companies and organizations conducting nonprofit group activities in Yosemite National Park. The permit holder must agree to abide by the terms and conditions of the SUP which is administered and managed by the Yosemite National Park, Office of Special Park Uses in conjunction with the Yosemite Protection Division.

Hang gliding in the park was originally conducted in cooperation with Yosemite National Park Rangers who both participated in and managed the program prior to 1992. Beginning in 1992 the Yosemite Hang Gliding Association began managing the program under permit from the park.

This SPU authorizes Class 1 and 2, non-powered, hang gliding in Yosemite National Park under supervision of the YHGA. (A basic definition is that a "hang glider" has a frame and a "paraglider" is a foot launch parachute. The difference between class 1 and 2 is a competition issue that separates two different kinds of hang gliders.) Paragliding is not permitted in Yosemite National Park.

Areas of use are limited to the assigned Glacier Point set up area and launch site and the Leidig Meadow landing sites. The activity is permitted to be conducted from June 1 through October 1 of the permit year. Launches are allowed daily from 7 a.m. to 9 a.m., but usually only occur on weekends. A maximum of 16 launches are allowed per day, however only 5 to 7 gliders are launched on average. A launch may only occur if approval is received from the Yosemite Emergency Communication Center, and there is no concurrent fire, Search and Rescue or medical air operations in the Yosemite Valley area. A launch may only take place under the supervision of YHGA authorized monitors, pursuant to the Yosemite Hang Gliding Site Manual (Site Procedures and Safety Requirements) and the SPU conditions. YHGA monitors are notified of Peregrine nesting areas that must be avoided while in flight and the information is made part of the preflight instructions for each participant.

**Project Locations:**
    Mariposa County, CA

**Mitigations:**

- No mitigations identified.

**Describe the category used to exclude action from further NEPA analysis and indicate the number of the category (see Section 3-4 of DO-12):**

      A.6 Commercial use licenses involving no construction.

**On the basis of the environmental impact information in the statutory compliance file, with which I am familiar, I am categorically excluding the described project from further NEPA analysis. No exceptional circumstances (e.g. all boxes in the ESF are marked "no") or conditions in Section 3-6 apply, and the action is fully described in Section 3-4 of DO-12.**

**Superintendent**__*//Don L. Neubacher//*_____

**Date**__4/15/13_____

| |
|---|
| *The signed original of this document is on file at the Environmental Planning and Compliance Office in Yosemite National Park.* |



**National Park Service**                                                    **Yosemite National Park**
**U.S. Department of the Interior**                                          **Date: 03/26/2013**

## ENVIRONMENTAL SCREENING FORM (ESF)

## DO-12 APPENDIX 1

**Date Form Initiated:**  03/26/2013

**Updated May 2007 - per 2004 Departmental Manual revisions and proposed Director's Order 12 changes**

## A. PROJECT INFORMATION

| | |
|---|---|
| **Park Name:** | Yosemite National Park |
| **Project Title:** | 2013-043 Programmatic Special Use Permit - Hang Gliding |
| **PEPC Project Number:** | 43657 |
| **Project Type:** | Permit - Special Use  (SUP) |
| **Project Location:** | |
| **County, State:** | Mariposa, California |
| **Project Leader:** | Ruth Middlecamp |

**Is project a hot topic (controversial or sensitive issues that should be brought to attention of Regional Director)?**  No

## B. RESOURCE EFFECTS TO CONSIDER:

| Identify potential effects to the following physical, natural, or cultural resources | No Effect | Negligible Effects | Minor Effects | Exceeds Minor Effects | Data Needed to Determine/Notes |
|---|---|---|---|---|---|
| 1. Geologic resources – soils, bedrock, streambeds, etc. | No | | | | |
| 2. From geohazards | No | | | | |
| 3. Air quality | No | | | | |
| 4. Soundscapes | No | | | | |
| 5. Water quality or quantity | No | | | | |
| 6. Streamflow | No | | | | |

| Identify potential effects to the following physical, natural, or cultural resources | No Effect | Negligible Effects | Minor Effects | Exceeds Minor Effects | Data Needed to Determine/Notes |
|---|---|---|---|---|---|
| characteristics | | | | | |
| 7. Marine or estuarine resources | No | | | | |
| 8. Floodplains or wetlands | No | | | | |
| 9. Land use, including occupancy, income, values, ownership, type of use | No | | | | |
| 10. Rare or unusual vegetation – old growth timber, riparian, alpine | No | | | | |
| 11. Species of special concern (plant or animal; state or federal listed or proposed for listing) or their habitat | No | | | | |
| 12. Unique ecosystems, biosphere reserves, World Heritage Sites | No | | | | Yosemite National Park is a World Heritage Site. |
| 13. Unique or important wildlife or wildlife habitat | No | | | | |
| 14. Unique or important fish or fish habitat | No | | | | |
| 15. Introduce or promote non-native species (plant or animal) | No | | | | |

| Identify potential effects to the following physical, natural, or cultural resources | No Effect | Negligible Effects | Minor Effects | Exceeds Minor Effects | Data Needed to Determine/Notes |
|---|---|---|---|---|---|
| 16. Recreation resources, including supply, demand, visitation, activities, etc. | No | | | | |
| 17. Visitor experience, aesthetic resources | No | | | | |
| 18. Archeological resources | No | | | | |
| 19. Prehistoric/historic structure | No | | | | |
| 20. Cultural landscapes | No | | | | |
| 21. Ethnographic resources | No | | | | |
| 22. Museum collections (objects, specimens, and archival and manuscript collections) | No | | | | |
| 23. Socioeconomics, including employment, occupation, income changes, tax base, infrastructure | No | | | | |
| 24. Minority and low income populations, ethnography, size, migration patterns, etc. | No | | | | |

| Identify potential effects to the following physical, natural, or cultural resources | No Effect | Negligible Effects | Minor Effects | Exceeds Minor Effects | Data Needed to Determine/Notes |
|---|---|---|---|---|---|
| 25. Energy resources | No | | | | |
| 26. Other agency or tribal land use plans or policies | No | | | | |
| 27. Resource, including energy, conservation potential, sustainability | No | | | | |
| 28. Urban quality, gateway communities, etc. | No | | | | |
| 29. Long-term management of resources or land/resource productivity | No | | | | |
| 30. Other important environment resources (e.g. geothermal, paleontological resources)? | No | | | | |

## C. MANDATORY CRITERIA

| Mandatory Criteria: If implemented, would the proposal: | Yes | No | N/A | Comment or Data Needed to Determine |
|---|---|---|---|---|
| A. Have significant impacts on public health or safety? | | No | | |
| B. Have significant impacts on such natural resources and unique geographic characteristics as historic or cultural resources; park, recreation, or refuge lands; wilderness areas; wild or scenic rivers; national natural landmarks; sole or principal | | No | | |

| Mandatory Criteria: If implemented, would the proposal: | Yes | No | N/A | Comment or Data Needed to Determine |
|---|---|---|---|---|
| drinking water aquifers; prime farmlands; wetlands (Executive Order 11990); floodplains (Executive Order 11988); national monuments; migratory birds; and other ecologically significant or critical areas? | | | | |
| C. Have highly controversial environmental effects or involve unresolved conflicts concerning alternative uses of available resources (NEPA section 102(2)(E))? | | No | | |
| D. Have highly uncertain and potentially significant environmental effects or involve unique or unknown environmental risks? | | No | | |
| E. Establish a precedent for future action or represent a decision in principle about future actions with potentially significant environmental effects? | | No | | |
| F. Have a direct relationship to other actions with individually insignificant, but cumulatively significant, environmental effects? | | No | | |
| G. Have significant impacts on properties listed or eligible for listing on the National Register of Historic Places, as determined by either the bureau or office? | | No | | |
| H. Have significant impacts on species listed or proposed to be listed on the List of Endangered or Threatened Species, or have significant impacts on designated Critical Habitat for these species? | | No | | |
| I. Violate a federal law, or a state, local, or tribal law or requirement imposed for the protection of the | | No | | |

| Mandatory Criteria: If implemented, would the proposal: | Yes | No | N/A | Comment or Data Needed to Determine |
|---|---|---|---|---|
| environment? | | | | |
| J. Have a disproportionately high and adverse effect on low income or minority populations (Executive Order 12898)? | | No | | |
| K. Limit access to and ceremonial use of Indian sacred sites on federal lands by Indian religious practitioners or significantly adversely affect the physical integrity of such sacred sites (Executive Order 13007)? | | No | | |
| L. Contribute to the introduction, continued existence, or spread of noxious weeds or non-native invasive species known to occur in the area or actions that may promote the introduction, growth, or expansion of the range of such species (Federal Noxious Weed Control Act and Executive Order 13112)? | | No | | |

## D. OTHER INFORMATION

**1.**   Are personnel preparing this form familiar with the site? Yes

**1.A.** Did personnel conduct a site visit? No

**2.**   Is the project in an approved plan such as a General Management Plan or an Implementation Plan with an accompanying NEPA document? No

**3.**   Are there any interested or affected agencies or parties? No

**4.**   Has consultation with all affected agencies or tribes been completed? No

**5.**   Are there any connected, cumulative, or similar actions as part of the proposed action? *(e.g., other development projects in area or identified in GMP, adequate/available utilities to accomplish project)* No

## E. INTERDISCIPLINARY TEAM SIGNATORIES

| Interdisciplinary Team | Field of Expertise |
|---|---|
| Don L. Neubacher | Superintendent |
| Woody Smeck | Deputy Superintendent |
| Michael Gauthier | Chief of Staff |
| Kathleen Morse | Chief of Planning |
| Randy Fong | Chief of Project Management |
| Teri Austin | Chief of Administration Management |
| Ed Walls | Chief of Facilities Management |
| Linda C. Mazzu | Chief of Resources Management & Science |
| Kris Kirby | Chief of Business and Revenue Management |
| Tom Medema | Chief of Interpretation and Education |
| Kevin Killian | Acting Chief of Visitor and Resource Protection |
| Ruth Middlecamp | Project Leader |
| Madelyn Ruffner | Acting Environmental Planning and Compliance Program Manager |
| Renea Kennec | NEPA Specialist |

## F. SUPERVISORY SIGNATORY

*Based on the environmental impact information contained in the statutory compliance file and in this environmental screening form, environmental documentation for this stage of the subject project is complete.*

**Recommended:**

| Compliance Specialists | Date |
|---|---|
| _//Renea Kennec//_____<br>Compliance Specialist – Renea Kennec | _3/27/13_____ |
| _//Madelyn Ruffner//_____<br>Acting Compliance Program Manager – Madelyn Ruffner | _4/10/13_____ |
| _//Randy Fong//_____<br>Chief, Project Management – Randy Fong | _4/11/13_____ |

**Approved:**

| Superintendent | Date |
|---|---|
| _//Don L. Neubacher//_____<br>Don L. Neubacher | _4/15/13_____ |

> *The signed original of this document is on file at the Environmental Planning and Compliance Office in Yosemite National Park.*



**National Park Service**
**U.S. Department of the Interior**

**Yosemite National Park**
**Date: 03/26/2013**

## PARK ESF ADDENDUM

**Today's Date: March 26, 2013**

**PROJECT INFORMATION**

| | |
|---|---|
| **Park Name:** | Yosemite National Park |
| **Project Title:** | 2012-043 Programmatic Special Use Permit - Hang Gliding |
| **PEPC Project Number:** | 43657 |
| **Project Type:** | Permit - Special Use (SUP) |
| **Project Location:** | |
| **County, State:** | Mariposa, California |
| **Project Leader:** | Ruth Middlecamp |

**PARK ESF ADDENDUM QUESTIONS & ANSWERS**

| ESF Addendum Questions | Yes | No | N/A | Data Needed to Determine/Notes |
|---|---|---|---|---|
| **SPECIAL STATUS SPECIES CHECKLIST** | | | | |
| Listed or proposed threatened or endangered species (Federal or State)? | | No | | |
| Species of special concern (Federal or State)? | | No | | |
| Park rare plants or vegetation? | | No | | |
| Potential habitat for any special-status species listed above? | | No | | |
| **NATIONAL HISTORIC PRESERVATION ACT CHECKLIST** | | | | |
| Entail ground disturbance? | | No | | |
| Are any archeological or ethnographic sites located within the area of potential effect? | | No | | |
| Entail alteration of a historic structure or cultural landscape? | | No | | |
| Has a National Register form been completed? | | No | | |
| Are there any structures on the park's List of Classified Structures in the area of potential effect? | | No | | |
| **WILD AND SCENIC RIVERS ACT CHECKLIST** | | | | |
| Fall within a wild and scenic river corridor? | Yes | | | Merced River |
| Fall within the bed and banks AND will affect the free-flow of the river? | | No | | |
| Have the possibility of affecting water quality of the area? | | No | | |

| ESF Addendum Questions | Yes | No | N/A | Data Needed to Determine/Notes |
|---|---|---|---|---|
| Remain consistent with its river segment classification? | | No | | |
| Fall on a tributary of a Wild and Scenic River? | | No | | |
| Will the project encroach or intrude upon the Wild and Scenic River corridor? | | No | | |
| Will the project unreasonably diminish scenic, recreational, or fish and wildlife values? | | No | | |
| Consistent with the provisions in the Merced River Plan Settlement Agreement? | | No | | |
| **WILDERNESS ACT CHECKLIST** | | | | |
| Within designated Wilderness? | Yes | | | Flight path begins over wilderness. |
| Within a Potential Wilderness Addition? | | No | | |



**National Park Service**
**U.S. Department of the Interior**

**Yosemite National Park**
**Date: 03/26/2013**

## ASSESSMENT OF ACTIONS HAVING AN EFFECT ON CULTURAL RESOURCES
## A. DESCRIPTION OF UNDERTAKING

**1. Park:** Yosemite National Park

**2. Project Description:**

    **Project Name:** 2012-043Programmatic Special Use Permit - Hang Gliding
    **Prepared by:** Renea Kennec
    **Date Prepared:** 03/26/2013
    **Telephone:** 209-379-1038
    **PEPC Project Number:** 43657

    **Area of potential effects (as defined in 36 CFR 800.16[d])**

**3. Has the area of potential effects been surveyed to identify historic properties?**

    \_\_\_\_ **No**
    \_X\_ **Yes**

    **Source or reference:** Yosemite Valley Historic District; Yosemite Valley Archeological District

**4. Potentially Affected Resource(s):**

**5. The proposed action will: (check as many as apply)**

| | |
|---|---|
| No | Destroy, remove, or alter features/elements from a historic structure |
| No | Replace historic features/elements in kind |
| No | Add non-historic features/elements to a historic structure |
| No | Alter or remove features/elements of a historic setting or environment (inc. terrain) |
| No | Add non-historic features/elements (inc. visual, audible, or atmospheric) to a historic setting or cultural landscape |
| No | Disturb, destroy, or make archeological resources inaccessible |
| No | Disturb, destroy, or make ethnographic resources inaccessible |
| No | Potentially affect presently unidentified cultural resources |
| No | Begin or contribute to deterioration of historic features, terrain, setting, landscape elements, or archeological or ethnographic resources |
| No | Involve a real property transaction (exchange, sale, or lease of land or structures) |
| | Other (please _____ |

_____ specify): _____

**6. Supporting Study Data:**
**(Attach if feasible; if action is in a plan, EA or EIS, give name and project or page number.)**

**B. REVIEWS BY CULTURAL RESOURCE SPECIALISTS**

**The park 106 coordinator requested review by the park's cultural resource specialist/advisors as indicated by check-off boxes or as follows:**

[ X ] Archeologist
Name: Laura Kirn
Date: 10/25/2012

*Check if project does not involve ground disturbance* [ X ]
Assessment of Effect: __ No Potential to Cause Effect   _X_ No Historic Properties
Affected   __ No Adverse Effect   __ Adverse Effect   __ Streamlined Review
Recommendations for conditions or stipulations:

Doc Method:  No Potential to Cause Effects [800.3(a)(1)]

[ X ] Anthropologist
Name: Laura Kirn
Date: 10/25/2012
Comments: Project was submitted for tribal review given the potential for the permits to inadvertently affect intangible cultural values. No comments were received.

*Check if project does not involve ground disturbance* [  ]
Assessment of Effect: __ No Potential to Cause Effect   _X_ No Historic Properties
Affected   __ No Adverse Effect   __ Adverse Effect   __ Streamlined Review
Recommendations for conditions or stipulations:

Doc Method:  No Potential to Cause Effects [800.3(a)(1)]

[ X ] Historical Landscape Architect
Name: Kevin McCardle
Date: 03/26/2013

*Check if project does not involve ground disturbance* [  ]
Assessment of Effect: __ No Potential to Cause Effect   _X_ No Historic Properties
Affected   __ No Adverse Effect   __ Adverse Effect   __ Streamlined Review
Recommendations for conditions or stipulations:

**No Reviews From**: Curator, Historical Architect, Historian, 106 Advisor, Other Advisor

**C. PARK SECTION 106 COORDINATOR'S REVIEW AND RECOMMENDATIONS**

**1. Assessment of Effect:**

    _____ **No Potential to Cause Effects**
    \_\_X\_\_ **No Historic Properties Affected**
    _____ **No Adverse Effect**
    _____ **Adverse Effect**

**2. Documentation Method:**

[ ] A. STANDARD 36 CFR PART 800 CONSULTATION
Further consultation under 36 CFR Part 800 is needed.

[ ] B. STREAMLINED REVIEW UNDER THE 2008 SERVICEWIDE PROGRAMMATIC
AGREEMENT (PA)

The above action meets all conditions for a streamlined review under section III of the 2008
Servicewide PA for Section 106 compliance.

APPLICABLE STREAMLINED REVIEW Criteria
(Specify 1-16 of the list of streamlined review criteria.)

[ ] C. PLAN-RELATED UNDERTAKING

Consultation and review of the proposed undertaking were completed in the context of a plan review
process, in accordance with the 2008 Servicewide PA and 36 CFR Part 800.
Specify plan/EA/EIS:

[ **X** ] D. UNDERTAKING RELATED TO ANOTHER AGREEMENT
The proposed undertaking is covered for Section 106 purposes under another document such as a
statewide agreement established in accord with 36 CFR 800.7 or counterpart regulations.
Specify: **1999 Programmatic Agreement**

[ ] E. COMBINED NEPA/NHPA Document
Documentation is required for the preparation of an EA/FONSI or an EIS/ROD has been developed
and used so as also to meet the requirements of 36 CFR 800.3 through 800.6

[ ] G. Memo to SHPO/THPO

[ ] H. Memo to ACHP

**3. Additional Consulting Parties Information:**

    **Additional Consulting Parties:  No**

**4. Stipulations and Conditions:**

**Following are listed any stipulations or conditions necessary to ensure that the assessment of effect above is consistent with 36 CFR Part 800 criteria of effect or to avoid or reduce potential adverse effects.**

**5. Mitigations/Treatment Measures:**

**Measures to prevent or minimize loss or impairment of historic/prehistoric properties: (Remember that setting, location, and use may be relevant.)**

**No Assessment of Effect mitigations identified.**

**D. RECOMMENDED BY PARK SECTION 106 COORDINATOR:**

Acting Historic Preservation Officer

*//Kimball Koch//*                                      Date: 3/29/13
Kimball Koch

**E. SUPERINTENDENT'S APPROVAL**

**The proposed work conforms to the NPS *Management Policies* and *Cultural Resource Management Guideline*, and I have reviewed and approve the recommendations, stipulations, or conditions noted in Section C of this form.**

Superintendent: *//Don L. Neubacher//*                    Date: 4/15/13
Don L. Neubacher

> *The signed original of this document is on file at the Environmental Planning and Compliance Office in Yosemite National Park.*

Revised 06-10
Form 10-114

UNITED STATES DEPARTMENT OF THE INTERIOR
National Park Service
**YOSEMITE NATIONAL PARK**
**20##**
Special Use Permit

| |
|---|
| ↓NAME (Authorized Agent ) |
| |
| ↓ORGANIZATION |
| **YOSEMITE HANG GLIDING ASSOCIATION** |
| ↓MAILING ADDRESS |
| **P.O. Box 519** |
| **Dunlap, CA 93621** |
| ↓TELEPHONE NUMBER       ↓ FAX NUMBER |
| **559-338-2621**       **559-338-0379** |

Park Alpha Code: YOSE-(8800)

Type of Use: Hang Gliding

Permit #:       YOSE-##- ### .

(for NPS office use only)

is hereby authorized to use the following described land or facilities in Yosemite National Park.

The permit begins on **June 1, 20##** The permit expires on **October 1, 20##** .

SUMMARY OF PERMITTED ACTIVITY: **Hang Gliding** *(Paragliding is not permitted.)*

**To occur in the following areas:**

**I.) Glacier Point launch site**
**II.) Leidig Meadow landing site**
**(See Attachment "B", Designated Use Area, and Site Maps, Attachments B-1 & B-2)**

**For the purpose(s) of:  Launching, flying and landing of powerless hang gliders within Yosemite National Park, per Site Management Plan**
**The launch window is between 8:00 A.M. and 9:00 A.M.**
No launch will be permitted without an official site monitor present.

Authorizing legislation or other authority:    16 USC 1A-1, 36 CFR Parts 1-7

NEPA Compliance: CATEGORICALLY EXCLUDED _X_ EA/FONSI ___ EIS ___ PEPC # 43657    OTHER _____.

NHPA section 106 is NO ADVERSE EFFECT pursuant to permit conditions 20 & 21

APPLICATION FEE        Received ___  Not Required _X_  Amount $ _____

LIABILITY INSURANCE:    Required _X_  Not Required ___  Amount $ 1,000,000.00 (Reference condition #8.)

COST RECOVERY:        Required _X_  Not Required ___  Amount $ 250.00

**ISSUANCE of this permit is subject to the attached conditions**. The undersigned hereby accepts this permit subject to the terms, covenants, obligations, and reservations, expressed or implied herein.

PERMITTEE _____

        Signature  (Sign & Print Name)                    Title                        Date


Authorizing NPS Official _____

        Signature  (Chief of Business Revenue Mgmt. for Superintendent        Date

Office of Special Park Uses
P.O. Box 700
El Portal, CA 95318

Tel: 209-379-1851, Fax: 209-379-1853

1 of 12

20##-Special Use Permit
Hang Gliding
Rev.12/13/2012

**Exhibit A – Page 18**
**United States v. David Nunn**

## CONDITIONS OF THIS PERMIT

1. **False Information:** The Permittee is prohibited from giving false information; to do so will be considered a breach of conditions and be grounds for revocation: [36 CFR 2.32(a)(3)].

2. **Legal Compliance:** The Permittee shall exercise this privilege subject to the supervision of the Superintendent or designee, and shall comply with all applicable Federal, State, county and municipal laws, ordinances, regulations, codes, and the terms and conditions of this permit. :termination of the permit.

3. **Validation & Enforcement of Permit Provisions:** If any provision of this permit shall be found to be invalid or unenforceable, the remainder of this permit shall not be affected and the other provisions of this permit shall be valid and be enforced to the fullest extent permitted by law.

4. **Additional Requirements:** The Permittee is responsible for making all necessary contacts and arrangements with other Federal, State, and local agencies to secure required inspections, permits, licenses, etc.

5. **Failure to Comply:** Failure to comply with any of the terms and conditions of this permit may result in the immediate suspension or revocation of the permit. All costs associated with clean up or damage repairs in conjunction with a terminated permit will be the responsibility of the Permittee.

6. **Revocation of Permit:** This permit may be revoked at the discretion of the Superintendent upon 24 hours notice, or without notice if damage to resources or facilities occurs or is threatened, notwithstanding any other term or condition of the permit to the contrary.

7. **Liabilities & Claims:** This agreement is made upon the express condition that the United States, its agents and employees shall be free from all liabilities and claims for damages and/or suits for or by reason of any injury, injuries, or death to any person or persons or property of any kind whatsoever, whether to the person or property of the (Permittee/Grantee), its agents or employees, or third parties, from any cause or causes whatsoever while in or upon said premises or any part thereof during the term of this agreement or occasioned by any occupancy or use of said premises or any activity carried on by the (Permittee) in connection herewith, and the (Permittee) hereby covenants and agrees to indemnify, defend, save and hold harmless the United States, its agents, and employees from all liabilities, charges, expenses and costs on account of or by reason of any such injuries, deaths, liabilities, claims, suits or losses however occurring or damages growing out of the same.

8. **Insurance:** Permittee agrees to carry general liability insurance against claims occasioned by the action or omissions of the Permittee, its agents and employees in carrying out the activities and operations authorized by this permit. The policy shall be in the amount of $1,000,000.00 and underwritten by a United States company naming the United States of America as **"Additional Insured"**. The Permittee agrees to provide the Superintendent with a Certificate of Insurance with the proper endorsements prior to the effective date of the permit. If the Permittee operates a motor vehicle used to transport clients, the Permittee shall also obtain comprehensive automobile liability insurance in the amount required by the State of California and/or the Federal Motor Carrier Safety Administration.

9. **Cost Recovery:** Costs incurred by the park as a result of accepting and processing the application and managing and monitoring the permitted activity will be reimbursed by the Permittee. Administrative costs and estimated costs for activities on site must be paid when the permit is approved.

Yosemite National Park
Office of Special Park Uses
Tel: 209-379-1851,  FAX: (209) 379-1853

Special Use Permit
HANG GLIDING SUP
(Rev. 12/13/2012)

Page 2 of 12

**Exhibit A - Page 19**
**United States v. David Nunn**

10. **Benefit by Congressional Member** As a condition of acceptance of this permit by the Permittee and pursuant to 41 U.S.C. 22, "No Member of Congress shall be admitted to any share or part of any contract or agreement made, entered into, or accepted by or on behalf of the United States, or to any benefit to arise thereupon."

11. **NPS Expenditures:** Nothing herein contained shall be construed as binding the Service to expend in any one fiscal year any sum in excess of appropriations made by Congress or administratively allocated for the purpose of this Agreement for the fiscal year, or to involve the Service in any contract or other obligation for the further expenditure of money in excess of such appropriations or allocations.

12. **Transfer of Authorization:** This permit may not be transferred or assigned without the prior written consent of the Superintendent.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## APPENDIX
## SPECIAL PARK CONDITIONS
### For Hang Gliding

*Regulations: Reference copies of the Yosemite National Park 36 C.F.R. 1.7(b) Compendium is available on the internet at http://www.nps.gov/yose/parkmgmt/lawsandpolicies.htm.. A copy of 36 CFR Part 1 to 199 may be found on the internet at: http://home.nps.gov/applications/npspolicy/getregs.cfm.*

*DEFINITIONS:*

**Permittee:** For the purpose of this permit the term "Permittee" shall include site monitors, participants and/or organization to whom this Special Use Permit is issued.

***Site Management Manual (Site Manual)*** *- Procedural and operational manual prepared and approved by the Yosemite Hang Gliding Association.)*

***Site Monitor*** *– Qualified Yosemite Hang Gliding Association (YHGA) pilot assigned to monitor and oversee permitted hang gliding operations. Monitor must be currently authorized by the YHGA.*

***Participant*** *– For the purpose of this permit the term "Participant" shall be defined as a person or persons who assist with glider set up and breakdown, and/or who is authorized to launch and land hang gliders during the permitted launch window.*

***Launch Site*** *– Designated use areas located at Glacier Point approved and assigned for the purpose of setting up and, launching hang gliders (See attachments B & B1.)*

***Landing Site*** *–Designated use areas located at Leidig Meadow approved and assigned for the purpose of landing hang gliders (See attachments B & B2.)*

13. **Carry Permit** - The Permittee is required to carry a valid copy of this entire permit or a copy of the valid "Field Permit" if one is issued, while operating in the park.

14. **Use Limits** - It is expressly understood that the Superintendent may impose public use limits based upon his authority stated in Title 36 of the Code of Federal Regulations, Section 1.5.

15. **Additional Permits** – It is the responsibility of the Permittee to obtain any additional permits for activities not covered under this Special Use Permit.

16. **Activity** – **(Hang Glider Classification)** This permit is issued specifically for hang gliding activities conducted with class 1 and 2 non-powered hang gliders only, and expressly excludes class 3 (paragliders) and parachutes used in base-jumping activities. (See Attachment-A for Hang Gliding definitions.)

**Exhibit A - Page 20**
**United States v. David Nunn**

(Conditions Continued)

17. **Compliance** - The Permittee shall exercise this privilege subject to the supervision of the Superintendent, and shall comply with all applicable regulations of the area.  The Permittee and all participants authorized herein must comply with all of the conditions of this Permit including all exhibits, amendments, or written directions of the park Superintendent.  The Permittee will comply with any special instructions received from the Superintendent, or representative thereof, both written and or verbal, concerning operations within Yosemite National Park.

18. **Designated Use Area** - The Permittee will adhere to the designated use area locations (reference Attachment B).  No alternate launch or landing sites may be used unless first approved in writing by the Superintendent.

19. **Employee / Agent Responsibility -** The Permittee and all participants authorized herein must comply with all of the conditions of this permit including all conditions, attachments, amendments, or written directions of the Park Superintendent.  The Permittee is responsible for complying with all applicable rules and regulations of the park.  The Permittee shall insure that all monitors and participants are informed of all applicable conditions of this permit.  (The organization may be cited for any violation(s) committed by their members in regard to the permitted activity).

20. **Supervision -** The Permittee shall train their monitors and educate their members to ensure that the park's geological, biological, historical and archeological resources are not disturbed.  The Permittee is responsible for informing monitors and participants of park regulations and assuring adherence to the regulations.

21. ***Protection of Natural Resources & Cultural Artifacts (Historic and Prehistoric)*** – The Permittee will not allow employees or clients to disturb or remove from the park any natural and/or historic and/or cultural artifacts including arrowheads, rock mortars, glass bottles/jars or similar artifacts. Rocks, flowers, plants and parts of plants (alive or dead) as well as other natural resources may not be removed.

22. **Damages -** The areas used by the Permittee shall be left in substantially the same condition as prior to the activities authorized herein.  The Permittee shall be liable for any damages to property of the United States resulting from the activities authorized hereunder.  The Permittee may not remove standing trees, bush or limbs to clear launch and/or landing sites.

23. **Mitigation -** The Permittee shall pay the United States Government for any damage(s) resulting from this special use which would not reasonably be inherent in the use which the Permittee is authorized to make, as described in this permit.

24. **Special Area Closure** - The Permittee must notify participants of Peregrine Falcon nesting locations to be avoided during launch from Glacier Point and along the valley's north rim flight path. (Permittee will be notified by this office regarding area closures.)

25. **Launch Window** - **The launch window will be between 8:00 A.M. and 9:00 A.M**.  Launching is not allowed outside of this time.  All gliders must be on the ground by 10:00 A.M. No launch will be permitted without an official site monitor present.

26. **Flight Clearance –** The monitor must contact the Yosemite Emergency Communication Center (Yosemite Dispatch) for flight clearance prior to the first launch. The monitor must notify Yosemite Dispatch when the last hang glider has launched for the day. The monitor must notify Yosemite Dispatch when all gliding activities have concluded for the day (all pilots must be on the ground).

Yosemite National Park
Office of Special Park Uses
Tel: 209-379-1851, FAX: (209) 379-1853
Page **4** of 12

Special Use Permit
HANG GLIDING SUP
(Rev. 12/13/2012)

**Exhibit A – Page 21
United States v. David Nunn**

(Conditions Continued)

27. **Maximum Gliders to be Launched** - A maximum of sixteen (16) flights per day will be allowed from Glacier Point.  This does not include the site monitor if he/she chooses to fly (i.e., 17 flights will be allowed if the site monitor is flying).  However, the Site Monitor will remain responsible for ensuring that ALL launches are completed by 9:00 A.M. and that all pilots are on the ground by 10:30 A.M.

28. **Pilot Proficiency**  Pilots must have at least a valid advanced rating issued by the United States Hang Gliding Association (USHGA).  All pilots must be current members of the United States Hang Gliding Association and must have their laminated USHGA membership card in their possession to fly.

29. **Tandem Flights** – Tandem flights are not permitted.

30. **Aerobatics** – Aerobatic flying is not permitted. For the purpose of this Special Use Permit, aerobatic flying is defined as any maneuver that exceeds a bank angle of 90 degrees, or nose up or down pitch angle of 30 degrees, or spins.

31. **Paragliders** – Paragliding is not permitted (reference condition #16).

32. **Experimental Gliders -** Pilots are prohibited from using the flight for testing experimental gliders, unnecessary parachute deployments, or any hazardous operations.

33. **Pilot Personal Protective Equipment** - All pilots are required to wear a helmet and fly with a locking type carabiner and a backup hang loop.  Pilots must also wear a parachute with safeties installed to prevent accidental deployments.  It is further recommended that all pilots wear protective clothing covering arms and legs, enclosed footwear, gloves, and eyeglass retainers.

34. **Safety** - The Permittee shall take every reasonable precaution to ensure the safety of its monitors, its participants, other park visitors, and park employees.  Permittee shall ensure equipment used in the authorized activity shall be inspected to ensure that it is mechanically sound and in safe operating condition before each flight.  Gliders must be maintained in satisfactory airworthy condition in full accordance with manufacturer's recommendations.  (Periodic inspection and maintenance are the responsibility of the pilot.)  When weather condition exist that are deemed unsafe by the site monitor, on the basis of adverse flying conditions, the monitor will close the site to all flying for the duration of the adverse conditions.

35. **Operating Procedures** – The monitor is responsible to communicate the following operating procedures to each glider pilot.
    **1)** Preflight Check - Following glider assembly, the pilot will conduct a thorough preflight check in accordance with manufacturer's recommendations.  Site Monitors will perform all preflights.
    **2)** All launches must be witnessed and assisted by the on duty Site Monitor and must occur at the designated launch area just east of the Glacier Point Geology Exhibit hut.
    **3)** Takeoff Check - Prior to each takeoff, the pilot will follow standard check of harness hook-in and assure clear airspace before beginning the takeoff run. The pilot will check for sufficient clearance after launch to assure positive control of the glider before entering and securing the flight harness.
    **4)** All landings within the park are restricted to the designated landing area (Leidig Meadow) except for emergency landings dictated by obvious safety considerations.  (Any Emergency landing must be reported to Yosemite Dispatch immediately after the landing with a confirmation of the status of the pilot.  A written notification must be sent to the Office of Special Park Uses within 48 hours regarding the cause and outcome of the emergency landing, report submitted by email is acceptable.)

Yosemite National Park
Office of Special Park Uses
Tel: 209-379-1851,  FAX: (209) 379-1853

Page 5 of 12

Special Use Permit
HANG GLIDING SUP
(Rev. 12/13/2012)

**Exhibit A - Page 22**
**United States v. David Nunn**

(Conditions Continued)

**5**) Immediately after landing, pilots must check for other approaching gliders and move their own glider as necessary to clear the touchdown point for the approaching glider.
**6**) Pilots are prohibited from using the flight for testing experimental gliders, unnecessary parachute deployments, or any hazardous operations.
**7**) Pilots are responsible for adhering to all applicable Federal Air Regulations (FARs).

36. **Entry Fees** - Permittee agrees to pay all applicable entrance fees in effect at the time of arrival at the park entrance station or designated fee collection site. Attempting to avoid payment of appropriate fees is a violation of federal law. Any attempt at fee fraud will result in the revocation of this permit and the Permittee will be subject to criminal prosecution**.**

37. **Harassment of Park Visitors & NPS Employees** - Any harassment and/or threats to any park visitor or National Park Service employee by the Permittee will result in the suspension and/or revocation of this permit.

38. **Report of Injury** - The Permittee is required to immediately report the occurrence of ANY serious personal injury and/or property damage incident occurring within the park involving participants, and/or monitors. This report may be made in person to a park protection Ranger or by phone to Yosemite Dispatch. In addition, a written report must be submitted to the Office of Special Park Uses within 72 hours of the incident. The YHGA Accident Report Form may be used to make the written report. The Permittee must cooperate with any investigation of the incident by the National Park Service.

39. **Search and Rescue Cost Recovery** - The Permittee shall assume all costs incurred by the National Park Service associated with rescues, evacuations and/or searches for lost/injured/deceased persons participating in the permitted activity and resulting from the Permittee's negligence.

40. **Monthly Use Reports** - The Permittee must send a copy of their Daily Flight Log to the Office of Special Park Uses at the end of each month that the permitted activities occur. (Failure to submit the form is a violation of this Permit and compromises the park's ability to manage park resources.)

41. **Permit Renewal** - The Permittee shall give written notice of his/her intent to renew the permit for the next calendar year. This notification serves as an application for permit renewal for the following year and must be received in this office by December 1, 20##.

42. **Annual Report** - The annual survey is a separate requirement from the monthly use report. (Information from the Monthly Use Report is collected by the Wilderness Office to assist in the management of park resources. Information collected from the Annual Survey is used to assist the Office of Special Park Uses in updating records and to assist in park management efforts.) The Permittee shall submit an annual survey report, which summarizes total in-park visitor use and includes taxable gross revenues for the year. The report form is due by December 1 of the current permit year. (A blank Annual Survey Form will be sent to the Permittee by this office.) *Due to the increased workload involved in issuing these permits a strict cut-off date will be observed. Organizations sending in the Annual survey after the December 1 deadline, without prior approval, will be required to apply for the 20## SUP and pay the $50 processing fee.* (Organizations sending the Annual Survey in prior to the deadline will automatically receive the 20## SUP without going through a new application process.)

Yosemite National Park
Office of Special Park Uses
Tel: 209-379-1851,  FAX: (209) 379-1853

Page **6** of 12

Special Use Permit
HANG GLIDING SUP
(Rev. 12/13/2012)

**Exhibit A - Page 23**
**United States v. David Nunn**

(Conditions Continued)

43. **<u>Review</u>** - The Permittee will review the Yosemite Hang Gliding Association Site Management Manual annually and will submit, in writing any revisions for review by the Superintendent.  If no revisions are made, a written statement signed by the Board representative(s) will be submitted stating that no changes were made and show the date of Board Review and acceptance of the current document.  This document must be received no later than March first of the permit year.

**Refer to Attachments:**
        **A – United States Hang Gliding Association (USHGA) Hang Glider Definitions**
        **B – Designated Use Area (Defined)**
          **- Flight Path**
        **B1 – Launch Site Map**
        **B2 – Landing Site Map**

*A copy of the Yosemite Hang Gliding Association Site Management Manual (reviewed and approved by the YHGA Board without changes, dated ##/##/####) is on file with the Office of Special Park Uses.*

Yosemite National Park
Office of Special Park Uses
Tel: 209-379-1851,  FAX: (209) 379-1853

Special Use Permit
HANG GLIDING SUP
(Rev. 12/13/2012)

Page **7** of **12**

**Exhibit A - Page 24**
**United States v. David Nunn**

**ATTACHMENT-A**

## Glider Classes Definitions

For obvious reasons, the USHGA's Competition Rulebook contains the most stringent definition of glider classes. Those definitions are in Chapter 4, Gliders and Equipment.

*Sections 4.1 and 4.2 state*:

**4.1 DEFINITION OF A HANG GLIDER.** For the purposes of these rules, a hang glider shall be defined as a single place unpowered aircraft which can be safely launched entirely by the use of the pilot's legs, and safely landed without the use of any landing gear other than the pilot's legs. During such launch and landing, the weight of the glider must be able to be supported entirely by the pilot and those aerodynamic forces resulting from the motion of the glider through the air.

**4.2 DEFINITION OF GLIDER CLASSES**

**(A) Class 1 -** Class I hang glider is any hang glider in which the pilot is supported in a harness as a pendulum from a suspension point on the glider, where all lines attached to the pilot's body must function as support or safety restraint lines and must proceed directly from their point of attachment to, and terminate at, a single point or fitting between the pilot and glider (i.e., the carabiner), and where control of the glider is effected only by the displacement of pilot body weight, (whereby, forward displacement results in a decrease in angle of attack, rearward displacement results in an increase in angle of attack, and lateral displacement results in a turn in that direction), and by those aerodynamic effects which result from such distortion of the wing as arises from such weight displacement. Devices may be incorporated which amplify the effects of said weight displacement, but not which transpose or redirect those effects, (i.e., the ability to "cross control" is prohibited). In-flight changes in glider geometry which are symmetrical and which result from pilot actions other than the weight shift control of the glider as defined above are allowed in Class 1 gliders.

**(B) Class 3** (paraglider) --Class 3 gliders have no rigid structure defining the airfoil.

**(C) Class 2** --Any hang glider which does not fit into Class I or Class 3 as defined above is considered a Class 2 glider. In essence, a hang glider has a frame and a paraglider is a foot launch parachute. The difference between class 1 and class 2 is a competition issue that separates two different kinds of "hang gliders". So far, both in the United States and Internationally, the words hang glider and paraglider are enough to separate the two types of wings.

```
(Definitions taken from the United States Hang Gliding Association competition rule
book.)
```

Yosemite National Park
Office of Special Park Uses
Tel: 209-379-1851,  FAX: (209) 379-1853

Page **8** of **12**

Special Use Permit
HANG GLIDING SUP
(Rev. 12/13/2012)

**Exhibit A - Page 25**
**United States v. David Nunn**

**ATTACHMENT - B**

# Designated Use Areas

**DESIGNATED USE AREAS-** **The Superintendent hereby assigns the Permittee the following locations within Yosemite National Park for the purposes necessary to conduct authorized hang gliding activities during the term of this permit. This permit shall not be construed as limiting the authority of the Superintendent to issue similar permits to others.**

**GLACIER POINT** **(See "Attachment B1 – Hang Glider Launch Site" map)**
*The launch site* **and set up area consists of a 300 foot by 50 foot zone located south-east and below the Glacier Point Geological exhibit, and includes the northern most section of the old hotel site. Use of the assigned area is authorized between the periods of 7:00 A.M. and 9:30 A.M. daily from June 1 through October 1, provided the Glacier Point Road is open to the public. (Dates are dependent upon the opening and closing of the Glacier Point Road to the public.)**

**LEIDIG MEADOW** **(See "Attachment B2 – Hang Glider Landing Site" map)**
*The primary landing zone* **consists of an approximate 150 yard area at the west side of Leidig Meadow between the main oxbow/drainage and pedestrian/bike path near Swinging Bridge. The area is divided into two sections listed as site 1A and 1B. This location is to be used during low water season when the meadow is dry. The elevation at site 1A is approximately two feet lower than site 1B. This location is to be used during low water season when the meadow is dry. Gliders land in the primary sites depending on current wind conditions, pilot experience with landing in the meadow and ground moisture (high-water effects). The pedestrian/bike path near Swinging Bridge is used to access to and exit from the primary landing zone.**

*The secondary landing zone* **is located in the north east section of Leidig Meadow on the west side of the oxbow/drainage. This area is rarely used except during the high water season when the primary sites may be under water or too muddy to land on. Use of the secondary zone is not only to avoid possible injury, but to mitigate excessive resource impacts that might occur by landing and walking on the wet meadow lands. Access to the site is made from the west end of the Yosemite Lodge bus parking lot B (old Annex housing area).**

**Use of the Leidig Meadow landing zone areas is authorized between the hours of 7:00 A.M. to 10:30 A.M. daily from June 1 through October 1 of the permit year.**

Yosemite National Park
Office of Special Park Uses
Tel: 209-379-1851,  FAX: (209) 379-1853

Page 9 of 12

Special Use Permit
HANG GLIDING SUP
(Rev. 12/13/2012)

**Exhibit A - Page 26**
**United States v. David Nunn**

## ATTACHMENT – Flight Path



Yosemite National Park
Office of Special Park Uses
Tel: 209-379-1851,  FAX: (209) 379-1853

Special Use Permit
HANG GLIDING SUP
(Rev. 12/13/2012)

Page **10** of 12

**Exhibit A - Page 27**
**United States v. David Nunn**

# ATTACHMENT – B1



Yosemite National Park
Office of Special Park Uses
Tel: 209-379-1851,  FAX: (209) 379-1853

Special Use Permit
HANG GLIDING SUP
(Rev. 12/13/2012)

Page **11** of 12

Exhibit A - Page 28
United States v. David Nunn

**ATTACHMENT – B2**



Yosemite National Park
Office of Special Park Uses
Tel: 209-379-1851,  FAX: (209) 379-1853

Special Use Permit
HANG GLIDING SUP
(Rev. 12/13/2012)

Page **12** of 12

Exhibit A – Page 29
United States v. David Nunn