Sean Anderson
Legal Officer
NATIONAL PARK SERVICE
Legal Office
P.O. Box 517
Yosemite, California 95389
Telephone: (209) 372-0241

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DAVID A. NUNN,<br><br>Defendant. | Case No. 6:20-PO-00742-HBK<br><br>**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Judge: Hon. Helena M. Barch-Kuchta |

**INTRODUCTION**

The United States of America, by and through its representative Sean O. Anderson, Legal Officer for the National Park Service in the Eastern District of California, hereby responds to the Defendant's Motion to Dismiss. This opposition is based upon the Memorandum of Points and Authorities contained in this response, all the files and records in this case, and such oral and documentary evidence and law as it may be presented at the hearing.

//

//

//

# **MEMORANDUM OF POINTS AND AUTHORITIES**

## **FACTUAL BACKGROUND**

On July 21, 2020, at approximately 6:11 a.m., the Yosemite Communications Center received a report of a male with a spinal injury from a sky diving accident. Government Exhibit 1, Ranger Cassling Report at Bates Number 000004. Yosemite Ambulance personal responded and located, David A. NUNN, the Defendant, at the base of El Capitan near the Alcove Swing. *Id*. Ranger Cassling responded as a member of the litter team and was the investigation officer.[1] *Id*. When Ranger Cassling arrived on the scene he saw Yosemite EMS personal treating NUNN, who was lying on his back and had a visibly bloodied nose. *Id*. EMS personal informed Ranger Cassling that they had moved NUNN a few feet below from where NUNN was initially found and had removed some of his equipment to treat him. *Id*. Ranger Cassling saw a collapsed green parachute with a harness laying on the ground above where NUNN was being treated. *Id*. The equipment found included a helmet, elbow pads, and knee pads. *Id* at Bates Number 000005.

NUNN was asked by U.S. Park Rangers about how his injuries occurred. *Id.* NUNN stated he had jumped off El Captain around 6:00 a.m. that morning after backpacking the previous day. *Id*. NUNN continued to state that after he deployed the parachute it collapsed around "The Towers" causing him to descent in a spiral close to the face of El Captain and ultimately collide with the wall approximately 10-20 feet from the base. *Id.* NUNN stated he had a wilderness permit. *Id.* NUNN was then transported by the liter team to El Captain Meadow where he was flown to Doctors Medical Center of Modesto around 9:08 a.m. *Id.* After NUNN was transported, Ranger Cassling, U.S. Park Ranger Fey, and U.S. Park Ranger Gutierrez went back to the incident and inventoried the property and evidence left behind. *Id.* The Park Rangers seized: two GoPro Cameras; a helmet with chinstrap and GoPro mount; knee and elbow pads; clear protective

---

[1] A litter team is made up of emergency response personal responding to an incident.

goggles, parachute container/ harness; and deployed parachute. *Id.*

On August 3, 2020, NUNN returned to Yosemite Valley to retrieve his property. *Id.* Ranger Cassling saw NUNN and returned all the property except the items that were seized as evidence. *Id.* NUNN was informed that he would receive the seized property after the adjudication of his case. *Id.* Ranger Cassling then issued NUNN two citations. (1) for violating 36 C.F.R. §2.17(a)(3) (delivering or retrieving a person by airborne means, except in an emergency), (2) for violating 36 C.F.R. §1.6(g)(2) (violating terms and conditions of permit). *Id.* at Bates Number 000002-000003.

Defendant filed a motion to dismiss the Count Two of the complaint on April 27, 2021, citing the underlying regulation, 36 C.F.R. §2.17(a), to be arbitrary and capricious. Def. Motion to Dismiss at 1.

**APPLICABLE LEGAL STANDARDS**

54 U.S.C. §100101 gives the Secretary of the Interior (hereinafter "Secretary"), through the Director of the National Park Service, authority "to promote and regulate the use of the National Park System by means and measures that conform to the fundamental purpose of the System units…." 54 U.S.C. § 100751 further directs the Secretary to "prescribe such regulations as the Secretary considers necessary or proper for the use and management of System units." Through this authority, the Secretary prescribed 36 C.F.R. §2.17(a)(3), which prohibits "delivering or retrieving a person or object by parachute, helicopter, or other airborne means, except in emergencies involving public safety or serious property loss, or pursuant to the terms and conditions of a permit."

**ARGUMENT**

Defendant contends that the underlying regulation, 36 C.F.R. §2.17(a) (hereinafter "§2.17(a)"), is arbitrary and capricious within the meaning of the Administrative Procedure Act (hereinafter "APA") 5 U.S.C.§706(2). Def. Motion to Dismiss at 1. Specially, Defendant asserts the regulation was promulgated without a statement of basis and purpose and without this the regulation fails to meet the procedural requirements of the APA. *Id.*

Defendant's motion should be dismissed because Defendant has failed to establish that he exhausted his administrative remedies, as required by the APA. *United States v. Backlund*, 689 F.3d 986, 990 (9th Cir. 2012).

**I.  An Affirmative Defense of Judicial Review of Agency Action is Limited in Criminal Cases.**

The APA has established a framework for an individual with a personal stake in underlying action to challenge an agency action. A "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. §702. 5 U.S.C. §703 establishes the form and venue of a judicial review proceeding. "The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute." *Id.* However, "if there is no special statutory review proceeding applicable, the action for judicial review may be brought against the United States, the agency by its official title, or the appropriate officer."[2] *Id.*

In *United States v. Backlund*, two defendants, Backlund and Everist, were prosecuted under 36 C.F.R. §2610(b) for residentially occupying National Forest Service lands without

---

[2] 5 U.S.C. §703 also does allow agency action to be subject to judicial review in civil or criminal proceedings for judicial enforcement, "except to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law."

-4-

special-use authorization or an approved operation plan. 689 F.3d 986, 990 (9th Cir. 2012). Both defendants owned separate mining claims on National Forest Service lands. *Id.* Federal law permits mining operations and uses that are "reasonably incident thereto." *Id.* "Individuals mining in the national forest must comply with regulations promulgated by the United States Department of Agriculture." *Id.* Under these regulations, long-term residency on a claim site requires National Forest Service authorization. *Id.* Individuals may either acquire an approved plan of operations or a special use authorization. The defendants appealed their respective convictions on three grounds including "that the district court denied them due process by precluding them from challenging the Forest Service's administrative determinations that their residences were not reasonably incident to mining." *Id.*

In 2001, Backlund submitted a proposed plan of operations for the mining claim to the Forest Service. *Id.* at 992. As part of the review, the Forest Service prepared a Surface Use Determination Report, which evaluated whether use of structures on the claim were reasonably incident and necessary for mining." *Id.* In 2004, the Forest Service examiners determined that the permanent camp trailer structure was not reasonable or necessary and the examiners recommended that the Forest Service deny the request for its use. *Id.* In 2005, Backlund informed the Forest Service he did not believe he needed a plan of operations because his operation was not causing a significant disturbance. *Id.* The Forest Service disagreed and in 2006 Backlund was issued a notice of noncompliance. *Id.* at 993. Backlund appealed the notice but Acting Forest Supervisor affirmed the finding of noncompliance. *Id.* Backlund did not appeal this decision but later submitted proposed plan of operations once late in 2006 and another in 2007. *Id.* Both were determined that year-round residency was not reasonably necessary. *Id.* Backlund filed a first level appeal that was denied and then filed a second level appeal. *Id.* This too was denied. *Id.* Backlund was notified of noncompliance in 2008. *Id.* The Government filed a misdemeanor in the

United States District Court for the District of Oregon, charging Backlund with violation of 36 C.F.R. §261.10(b). *Id.* Backlund filed a motion to dismiss which was rejected. *Id.* The court also "precluded Backlund from challenging the merits of the administrative decision as an affirmative defense at trial" because it would be an impermissible collateral attack on the agency decision. *Id.* at 994. Backlund pled guilty in a plea agreement which preserved his right to appeal the district court's pretrial rulings. *Id.*

Everist also owned a mining claim and filed notice of the location of the claim in 2006. *Id.* In 2009, a Forest Service minerals examiner was asked by a District Ranger to investigate the claim. *Id.* The mineral examiner testified at trial that the District Ranger knew Everist was residing on Forest Service lands for a while and the District Ranger wanted to know if this residency was reasonably necessary to the mining operation. *Id.* During the investigation of the mining claim, the examiners found that Everist had never submitted a notice of intent to operate or a proposed plan of operations. *Id.* The mineral examiner visited the camp site during the investigation and found a trailer but no mining equipment. *Id.* In 2009, the District Ranger sent a letter to Everist notifying him that his occupation was not authorized, and that residential occupancy was not found reasonably necessary to mining operations. *Id.* Everist was direct to remove all the camping equipment and stop all unauthorized residential occupancy on the claim. *Id.* Everist did not appeal the District Ranger's decision but Everist moved his trailer to a new site within Forest Service lands. *Id.* The Government filed a misdemeanor in the United States District Court of the District of Oregon with a violation of 36 C.F.R. §261.10(b). *Id.* at 995. Everist joined Backlund's motion, which was denied and was found guilty after a bench trial. *Id.*

In the appeal, one of the arguments made by the defendants was that the district court erred by precluding them from challenging the Forest Service's decision declining to authorize residency. *Id.* at 998. The defendants wanted to introduce evidence that the agency's

determination was irrational and erroneous. *Id.* The defendants argued that the district court's error denied them due process by foreclosing these affirmative defenses. *Id.* The court determined that "Forest Service regulations and the APA provide for meaningful administrative and judicial review of Forest Service decisions." *Id.* The defendants were able to appeal the written decisions of the district rangers. *Id.* "Once the petitioner has exhausted administrative remedies, federal court review of final agency action is available under the APA." *Id.* at 999. *Citing* 5 U.S.C. §702.

The court relied on two cases in determining the limitation of the court to review agency administrative decisions. In *Coleman v. United States*, 363 F.2d 190 (9th Cir.1966), *rev'd on other grounds*, 390 U.S. 599 (1968), a civil ejectment suit initiated by the government, the court rejected the government's argument that review of the ejectment suit was limited because Coleman did not seek direct judicial review of the administrative decision. *Id.* at 196. Instead the court held that the agency misapplied the statute and applicable case law and granted Coleman's APA counterclaim. *Id.* at 203-04.

Additionally, the court looked at *United States v. Lowry*, 512 F.3d 1194 (9th Cir. 2008). In this case Lowry had been prosecuted for residing on national forest without a special use-authorization. *Id.* at 1195-96. Lowry tried to introduce evidence of an improperly denied Indian land allotment application from 10 years prior as an affirmative defense. *Id.* This was precluded by the district court. The court determined that because Lowry did not seek direct judicial appeal of the agency decision within the time allowed, she could not collaterally attack it in the subsequent criminal proceeding. *Id.* at 1203.

In reliance on these two cases the *Backlund* court determined that a person in Backlund's position, having administratively challenged the agency's decision, could either file suit under the APA or challenge the agency's decision in subsequent criminal proceedings. In contrast, the court

held Everist's conviction stood because the he had not first challenged the agency decisions administratively. *United States v. Backlund*, 689 F.3d at 1001.

NUNN and *Backlund* are similar because they are both asserting an affirmative defense of judicial review in a criminal case. However, unlike *Backlund*, NUNN is not challenging an agency decision that applies individually to him. The challenge being made is how the regulation was formed and whether it met the standards set forth in the APA. NUNN could have taken steps to challenge the regulation prior. He especially could have challenged the regulation during or after his previous conviction under the same regulation. Government Exhibit 1, Bates Number 000009-000010. The Defendant has failed to show on what authority an affirmative defense challenging the procedural formation of a regulation can be asserted. NUNN should be foreclosed from collaterally attacking the promulgation of the regulation because he has not sought administrative remedies or sought to challenge the regulation under the APA prior to raising an affirmative defense. Just as in *Lowry*, NUNN has had the ability to challenge the agency action prior to this and has not shown evidence of doing so.

**II.    A Judicial Review Action Must be Timely Under 28 U.S.C. §2401(a).**

28 U.S.C. §2401(a) requires that a civil action commenced against the United States be barred unless the complaint is filled within six years after the right of action first accrues. "As a general statute of limitation, it should apply to actions brought under the APA which challenge a regulation on the basis of procedural irregularity." *Sierra Club v. Penfold*, 857 F.2d 1307 (9th Cir. 1988). For the purposes of a suit challenging agency action under APA, the right of action generally accrues on the date of the final agency action. *See Aguayo V. Jewell*, 827 F,.3d 1213, 1226 (9th Cir. 2016). If a person wishes to challenge a mere procedural violation in the adoption of a regulation or other agency action, the challenge must be brought within six years of the

decision. *Wind River Min. Corp. v. U.S.*, 946 F.2d 710, 715 (9th Cir. 1991). *See also Perez-Guzman v. Lynch*, 835 F.3d 1066, 1077 (9th Cir. 2016). If the challenger contests the substance of an agency decision, they may do so later than six years. *Wind River*, 946 F.2d at 715. *U.S. v. Backlund*, the court applied the six-year time limit to the defendant's option to challenge the agency's decision in a subsequent criminal proceeding despite 28 U.S.C. §2401(a) explicitly stating it applies to "civil actions."

The National Park Service promulgated §2.17(a) in June of 1983. 48 F.R. 30252 Jun. 30, 1983. 1983 would fall far out of the six-year limitation period.[3] Even if the Defendant was not required to challenge the regulation within six years of its promulgation, he certainly would have been required to challenged it within the statutory limit after his 1998 case. Government Exhibit 1, Bates Number 000009-000010. "The government's interest in finality outweighs a late-comer's desire to protest the agency's action as a matter of policy or procedure." *Wind River*, 946 F.2d at 715. Allowing the Defendant to challenge the promulgation of the underlying regulation decades after he has been previously charged would mean the Government's interest in finality would never be realized.

**CONCLUSION**

Under *U.S. v. Backlund*, the Defense has not shown exhaustion of administrative remedies prior to asserting this assertive defense. Additionally, the six-year statutory limitation on civil suits has been applied to criminal proceedings asserting a judicial review defense. Since the Defense is arguing the regulation failed procedurally the six-year limit would apply. If the Court disagrees with he Government's exhaustion of administrative remedies and timeliness of judicial

---

[3] Even though the regulation does not explicitly state BASE jumping, U.S. v, Oxx, 127 F.3d 1277 (10th Cir. 1997) applied the regulation to BASE jumping because the activity falls within the definition of parachute.

review action and seeks further briefing from the Government on the history and rule-making for the regulation, the Government would seek leave of the Court to supplement the briefing in this matter. The Government would need to conduct additional legislative history, consult with officials with the Department of the Interior, etc.

Dated: June 7, 2021                          Respectfully submitted,

                                             /s/*Sean O. Anderson*
                                             Sean O. Anderson
                                             Legal Officer
                                             Yosemite National Park