HEATHER E. WILLIAMS, Bar #122664
Federal Defender

Kara R. Ottervanger
Assistant Federal Public Defender
Florida State Bar No. 10112110
Kara_Ottervanger@fd.org
2300 Tulare St., Suite 330
Fresno, CA 93721
(559) 487-5561
(559) 487-5950 (fax)
Benjamin A. Gerson
Assistant Federal Public Defender
New York State Bar No. 5505144
Benjamin_Gerson@fd.org
411 E. Bonneville Ave., Suite 250
Las Vegas, NV 89101
(702) 388-6577
(702) 388-5819 (fax)

Attorneys for Defendant
DAVID NUNN

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>DAVID NUNN,<br><br>  Defendant. | Case No. 6:20-PO-00742-HBK<br><br>**REPLY TO UNITED STATES'S OPPOSITION TO DEFENDANT'S MOTION FOR EVIDENTIARY HEARING** |

1

## I. Introduction.

The United States opposes Mr. Nunn's motion for an evidentiary hearing on three grounds. The United States asserts (1) that Mr. Nunn's motion is procedurally defective because strict compliance with Local Rule 430.1(h) is necessary; (2) that there is insufficient evidence to support the motion; and (3) that an evidentiary hearing would be futile because in all cases the six–year statute of limitations for challenging and administrative regulation applies.

First, while Rule 430.1(h) is intended to streamline courtroom procedures, it does not supersede the trial judge's discretion, particularly in cases involving complex questions that pertain to a defendant's liberty or a defendant's constitutional right to present a defense. However, in an abundance of caution, and to aid this Court and the parties, Mr. Nunn provides the Rule 430.1 information herein. Second, for the reasons articulated by Mr. Nunn previously – which are again briefly outlined below – there is ample support for the need for an evidentiary hearing to further develop a record in support of Mr. Nunn's motion to dismiss. Third, the six–year statute of limitations is wholly imported from civil suits brought under the Administrative Procedures Act, and its application in criminal cases would deprive the defendant of the quintessential constitutional right to present a defense. Accordingly, the six–year statute of limitations is wholly inapplicable to Mr. Nunn's case and an evidentiary hearing would not be futile.

Mr. Nunn's motion for an evidentiary hearing is not, as the United States suggests, "last minute;" rather, the motion rests on questions that have developed during the instant litigation. Specifically, how administrative decisions within

Yosemite National Park led to the ban on BASE jumping and continued unavailability of permits to BASE jump in the park. At the hearings on October 12, 2021, and February 6, 2023, this Court specifically inquired of the United States as to the availability of permits as noted in the Yosemite compendium, and any available administrative appeals process should a permit be denied. At both hearings the United States failed to produce any information germane to this Court's questions. In addition, this Court raised concerns about the sources proffered in Mr. Nunn's motion to dismiss.

## II. The local rules imply judicial discretion, which in this case favors an evidentiary hearing.

Local Rule 430.1(h) sets forth procedures to facilitate an evidentiary hearing on a motion to dismiss. However, this Court has the authority to maintain its own motion calendar. *See* Local Rule 430.1(a). The United States acknowledges this its response. *See* ECF No. 50 at 1–2. This exercise of discretion allows a court to set a hearing at a point most conducive to properly disposing of the issues at bar. This is congruent with the Ninth Circuit's command in *United States v. Irwin*, 612 F.2d 1182, 1187 (9th Cir. 1980) (hearing required when material issues of fact that would entitle movant to relief are *raised*). Exercising discretion in granting an evidentiary hearing provides a vehicle for Mr. Nunn to vindicate his constitutional right to present a complete defense, in this case challenging the validity of the agency action. *See Holmes v. South Carolina*, 547 U.S. 319, 324 (2006).

In accordance with Local Rule 430.1(h), Mr. Nunn requests a total of four days for argument and the presentation of evidence at an evidentiary hearing.

### III. Mr. Nunn has presented substantial evidence that Yosemite National Park's ban on BASE jumping is arbitrary and capricious sufficient to warrant an evidentiary hearing.

In *Overton Park v. Volpe*, 401 U.S. 402, 415 (1971) the Supreme Court held that agency decision making that is within the scope of the power delegated to the agency is subject to substantial inquiry by the federal courts to determine if those decisions were arbitrary and capricious. 5 U.S.C. § 706(2)(A). Because internal decision making does not require a formal rulemaking record, *Overton Park* authorized the lower federal courts to conduct evidentiary hearings to reconstruct the administrative record. *Overton Park*, 401 U.S. at 415.

Yosemite National Park's staunch prohibition of BASE jumping and fervent enforcement have been widely reported. *See* ECF No. 18 at 4–7. Of particular importance are the media accounts of the uncontradicted statements of Chief Ranger Bill Wendt, who in the early 1980s instituted, and then quickly revoked, the permitting process for BASE jumpers. *See* ECF No. 18 at 17 (citing Sunshine Superman (Magnolia Pictures 2014)); Exhibit A – Declaration of Carol Moses at ¶¶ 10–11; Exhibit D – David Shonauer, *Fixed Object Jumping*, The Atlantic May 1983 at 22 ("From now on we're throwing the book at them"). Firsthand accounts corroborate the policies implemented under Wendt and support Mr. Nunn's position that the prohibition on BASE jumping was driven by animus with little to no rational purpose.

Following the revocation of the permit system, BASE jumping continued in the park, with jumpers sometimes going to great lengths for their sport, despite it

being facially illegal. Exhibit A at paragraph 12; Exhibit B – Declaration of Grady Bryant at ¶¶ 5–7; Exhibit C – Declaration of Matt Gerdes at ¶¶ 3–4.

Enforcement efforts were both strict and unrelenting. Exhibit A at ¶ 13; Exhibit B at ¶ 6; Exhibit C at ¶ 5. A divisive and toxic culture developed between BASE jumpers and Rangers. The devolution into guarded camps served as a self-reinforcing basis for Yosemite's ban on BASE jumping. Coupled with Wendt's statements, the culture of prosecuting BASE jumpers at the expense of all other enforcement options belies the notion that enforcement policies were developed with clearly developed goals meant to preserve the park. *See* 54 U.S.C. §10010 *et seq.*

While Yosemite has a mandate to regulate activities within the park, BASE jumpers were treated differently than other park users, even though other users had similar impacts on the park. In many other instances, a viable permitting process was eventually developed. For example, in the early 1980s, there was no permit system for rock climbers. Climbers caused measurable environmental damage to the cliffs of El Capitan. Exhibit D at ¶ 26. Yet rock climbing was allowed to continue because climbers could be helpful to the Rangers in search and rescue operations. Exhibit A at ¶ 9. Currently, a permit system exists for rock climbers to limit overcrowding and environmental damage. *See* National Park Service, *Wilderness Climbing Permits*, https://www.nps.gov/yose/planyourvisit/climbingpermits.htm (last accessed March 8, 2023).

Hang gliders, likewise, are permitted to recreate in the park upon showing certain qualifications. *See* ECF No. 18, Exhibit A. Requiring demonstrated competency undoubtedly reduces the strain on park resources Exhibit A at ¶ 15.

However, the option to develop a workable permit system was stripped from BASE jumpers in the early stages of the sport for reasons unrelated to park preservation. BASE jumpers were effectively locked out of a legal pathway to parachute.

The history of BASE jumping in Yosemite includes numerous BASE jumpers whose actions were detrimental to the park. However, this is undoubtedly true for many other park users including rock climbers, campers, and hang gliders. Exhibit A at ¶ 9. The correct solution is to cite or arrest those bad actors who abuse the park or refuse to comply with permitting requirements. A blanket prohibition that is unsupported by reasoned decision making and perpetuated for decades through inflexible policies is the definition of arbitrary and capricious. *See International Ladies Garment Workers Union v. Donovan*, 722 F.2d 795, 818 (D.C. Cir. 1983).

The information proffered by Mr. Nunn in prior documents and in the declarations attached hereto are more than sufficient to support his request for an evidentiary hearing.

**IV. The evidentiary hearing would not be futile, as the six–year statute of limitations cannot, as a constitutional matter, apply to a criminal defense.**

The United States opposes Mr. Nunn's motion on the grounds that an evidentiary hearing is futile because a defense attacking the underlying regulation is time barred by a six–year statute of limitations. ECF No. 50 at 3–5. Despite the six–year statute of limitations applying only in civil cases brough against an administrative agency, the United States persists in trying to apply this limitation to an affirmative defense. Mr. Nunn has consistently opposed the application of the six–year statute of limitations as an infringement on his constitutional rights. *See*

*Adamo Wrecking Co. v. United States*, 434 U.S. 275, 289 (1978) (Powell, J., concurring).

## V. Evidentiary questions have arisen during the pendency of the instant litigation.

The United States' opposition to an evidentiary hearing turns on the contention that the instant motion is untimely and a dilatory tactic. ECF No. 50 at 2. That is not the case. Mr. Nunn proffered documentary evidence in his opening brief to support the contention that Yosemite's enforcement policies were borne out of animus towards the sport. *See* ECF No. 18 at 4–7. At the hearing on October 12, 2021, this Court specifically inquired of the United States about Yosemite's permitting and administrative appeals processes. The United States did not provide any factual information, and requested additional briefing, which this Court granted. *See* ECF No. 37. The United States' supplemental briefing also did not address this Court's question. This Court instructed the parties by minute order prior to the February 6, 2023, hearing to discuss the requirements for permits set forth in the Yosemite compendium. *See* ECF No. 47. This United States again did not provide information on the availability of permits. At the February 6, 2023, hearing Mr. Nunn relied largely on his prior proffer. This Court raised concerns about the admissibility of Mr. Nunn's proffer. Mr. Nunn made the instant motion for evidentiary development within a reasonable time to address this Court's concerns.

## VI. This Court should grant an evidentiary hearing to resolve important questions.

### A. An evidentiary hearing resolves important Due Process concerns.

At the core of due process is the right to present a complete defense. *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) ("[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.") (citing *Crane v. Kentucky*, 476 U.S. 683 (1998)) (internal quotations omitted). Mr. Nunn is charged with violating a regulation that was promulgated by an unelected administrative agency. The Department of the Interior and the National Park Service were delegated the power to promulgate regulations to preserve Yosemite National Park for future generations. 54 U.S.C. §10010 *et seq*. That power is not unlimited and the regulations are not infallible. Mr. Nunn has raised serious questions about the intent and implementation of the administrative regulation under which he is charged. Should he be prevented from fully litigating these issues, there is a grave risk he may be deprived of his liberty based on arbitrary decision making that occurred nearly four decades before the instant allegations.

### B. In the alternative, this Court should grant Mr. Nunn's motion to dismiss based on the existing record.

In the alternative, if this Court denies the instant motion, this Court should rule in Mr. Nunn's favor as the United States has not objected to the admissibility of Mr. Nunn's proffer, and has failed to proffer any evidence to contradict or rebut Mr. Nunn's claims.

**VII.  Conclusion.**

For the forgoing reasons Mr. Nunn respectfully moves this Court to grant the instant motion for an evidentiary hearing in support of his motion to dismiss.

Dated this 8th day of March, 2023.

                                          Respectfully submitted,

                                        Heather Williams
                                        Federal Public Defender

                                        */s/ Benjamin A. Gerson*
                                        Benjamin A. Gerson
                                        Assistant Federal Public Defender

                                        */s/ Kara R. Ottervanger*
                                        Kara R. Ottervanger
                                        Assistant Federal Public Defender