UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DAVID A. NUNN,<br><br>　　　　　Defendant. | Case No.  6:20-po-00742-HBK<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND DEFENDANT'S MOTION FOR EVIDENTIARY HEARING<br><br>(Doc. Nos.  18, 49) |

　　　　Pending before the Court is Defendant David Nunn's ("Defendant" or Nunn") Motion to Dismiss for Invalid Regulation under the Administrative Procedures Act ("APA"), 28 US.C. § 706.  (Doc. No. 18, "Motion").  Nunn was cited for (1) violating the terms of his wilderness permit (36 C.F.R. § 1.6(g)(2)); and (2) BASE[1] jumping without a permit (36 C.F.R. § 2.17(a)(3) stemming from his actions that occurred on July 21, 2020in Yosemite National Park.  Represented by the Federal Public Defender, Defendant seeks dismissal of the 36 C.F.R. § 2.17(a)(3) charge on the grounds that the regulation upon which the charged is predicated violates the APA.  The Government filed an opposition (Doc. No. 27), and Defendant filed a reply (Doc. No. 28).  The Court held an initial hearing on the motion.  (Doc. No. 32).  At the hearing, the Court granted permission to the Government to submit supplemental briefing.  (Doc. No. 39).

---

[1] The acronym BASE refers to the jump's origin: Buildings, Antennas (radio or television towers), Spans (bridges), and Earth (cliffs).

The Court additionally permitted Defendant an opportunity to file a further reply.  (Doc. No. 42). Thereafter, the Court held a second hearing to hear the parties' respective arguments on the motion.  (Doc. No. 48).

On February 15, 2023, Defendant filed a motion for evidentiary hearing citing this court's "concerns about the evidentiary record supporting Mr. Nunn's motion to dismiss." (Doc. No. 49). The Government filed an opposition (Doc. No. 50), and Defendant filed a reply (Doc. No. 53).

The parties' respective briefing and arguments have evolved from the initial briefing.  The Court addresses the salient points in this Order, to the extent clarified by the parties at the hearings.

## BACKGROUND

By way of background, the national park system in the United States first began with the establishment of Yellowstone National Park in 1872.  16 U.S.C. § 1a–1. In 1916, the National Park Service Organic Act created the National Park Service (NPS) within the Department of Interior.  16 U.S.C. § 1. NPS is charged with the responsibility to:

> promote and regulate the use of the National Park System by means and measures that conform to the fundamental purpose of the System units, which purpose is to conserve the scenery and the natural and historic objects and the wild life in the System units to provide for the enjoyment of the scenery, natural and historic objects, and wild life in such manner and by such means as will leave them unimpaired for the enjoyment of future generations.

54 U.S.C.A. § 100101 (a) (2014).  To fulfill its responsibilities, NPS promulgates regulations, which are codified at Title 36 of the Code of Federal Regulations.  The Act expressly prioritizes conservation and preservation as its mandate, but similarly envisions the dual goal of providing the public with enjoyment in recreation.  *See* 54 U.S.C. § 100101(b)(1)(A).  The increased and ever-evolving demands for different recreational uses within the national parks, however, has not been without controversies or challenges.[2]  *See Bicycle Trails Council v. Babbitt,* 82 F.3d 1445, 1468 (9th Cir.1996) (finding that the NPS "struck a reasoned balance among the sometimes

---

[2]*See* Robert B. Keiter, *The Emerging Law of Outdoor Recreation on the Public Lands*, 51 Envtl. L. 89, 104-110 (2021).

2

competing goals of recreation, safety, and resource protection as well as among the sometimes competing recreational interests of bicyclists and other park visitors" and the Act vests NPS with the authority to strike such a balance). Regulations specific to Yosemite are codified at 36 C.F.R. § 7.16. Additionally, park specific rules implemented under 36 C.F.R. are compiled in the Superintendent's Compendium.

Nunn's offense stems from his attempt to engage in a form of recreation—BASE jumping. According to the statement of probable cause in support of the violation, rangers were summoned to the base of El Capitan near Alcove Swing at approximately 6:11 a.m. on July 21, 2020, after receiving a report of an accident stemming from a BASE jump. Upon arrival, rangers found Nunn laying on the ground being attended to by Yosemite emergency medical personnel. Nunn admitted to jumping off El Capitan and stated his parachute had collapsed around "the Towers," causing him to collide with the wall roughly 10-20 feet from the base, just above the tree line. Nunn estimated his speed at the time of the collision to be approximately 25 mph. Nunn was transported by air ambulance for medical treatment. Afterwards, Nunn was cited for violating 36 C.F.R. § 2.17(a). (Doc. No. 3). Nunn had previously been charged in 1998 for BASE jumping and violating 36 C.F.R. § 2.17(c)(3). *See* Case No. 6:98-mj-00164-HGB.

In pertinent part, the subject regulation provides:

**§ 2.17 Aircraft and air delivery**.

(a) The following are prohibited:

(3)  Delivering or retrieving a person or object by parachute, helicopter, or other airborne means, **except** in emergencies involving public safety or serious property loss, or **pursuant to the terms and conditions of a permit**.

36 C.F.R. § 2.17(a)(3) (emphasis added). Nunn does not challenge whether the proscribed activity—BASE jumping—falls within the ambit of the regulation, noting that the issue has already been resolved by several courts.[3] (Doc. No. 54 at 13). Rather, Nunn challenges his violation under the regulation as arbitrary and capricious under 5 U.S.C. § 706(2). (*See generally*

---

[3] *See United States v. Albers*. 226 F.3d 989 (9th Cir. 2000), *cert denied*, 531 U.S. 1114 (2001); *United States v. Oxx*, 127 F.3d 1277, 1279 (10th Cir. 1997).

Doc. Nos. 18, 43). Nunn lodges two different points of attack.

First, Nunn contends the regulation in question, 36 C.F.R. § 2.17(a), lacked a reasoned analysis when initially promulgated on July 30, 1983. (Doc. No. 18 at 12, 16; Doc. No. 43 at 1-3; Doc. No. 54 at 12). Although Nunn acknowledges that the regulation was subject to notice and comment rulemaking by NPS, Nunn contends that "NPS offered exactly zero factual analysis as to the prohibition on parachuting in either the 1983 rule or the preceding 1966 rule." (Doc. No. 18 at 16:17-19, citing 31 F.R. 16651, Dec. 29, 1966; 48 F.R.D. 30252, June 20, 1983). According to Nunn, this "dearth of a record of the agency's reasoned analysis" renders the "regulation arbitrary and capricious." (*Id*. at 16:20-21). Because BASE jumping is different from "aircraft" covered by § 2.17, Nunn contends NPS was required to provide a further explanation for its decision to include it under that rule. (Doc. No. 18 at 17-18). Nunn asserts that NPS did not engage in a factual analysis to "validate the ban on aircraft, specifically, BASE jumping parachutists." (Doc. No. 43 at 3). Nunn clarifies that he raises an "as-applied" only challenge to the regulation. (Doc. No. 28 at 6:19-28). Specifically, Nunn seeks to have only the regulation as it applies to his violation for BASE jumping deemed invalid. (*Id*.).

Second, Nunn argues that the NPS "informal adjudication" to ban BASE jumping in Yosemite in the 1990s was without a reasoned analysis. (Doc. Nos. 18 at 19; 43 at 3-4). Nunn argues that the decision to prohibit BASE jumping in Yosemite "was motivated by animus, rather than reasoned decision making." (Doc. No. 18 at 20:23-25). Nunn claims a rudimentary permit system existed in Yosemite and was abruptly stopped by head park ranger, Bill Wendt, because he disagreed with BASE jumping "in principle" as opposed to it having "an articulable impact on the park." (*Id*. at 20:4-7). Nunn quotes to published statements attributed to Wendt in which he allegedly stated "[t]here were just too many free spirits, and we had to shut them down" and "I started the permit system, and I ended it." (*Id*. at 20:5-7, citing Sunshine Superman (Magnolia Picture, 2014). Essentially, Nunn argues that NPS adopted a de facto rule during this time that flatly prohibited BASE jumping in Yosemite. As further evidence that this the facto ban is arbitrary and capricious, Nunn points to the fact that NPS has permitted hang gliding for several years in Yosemite with a special use permit and NPS permits BASE jumping with a permit at

1  New River Gorge National Park.  (*Id*. at 20).  Nunn attaches a copy of the Special Use Permit

2  granted for hang gliding.  (Doc. No. 18-1) and New River Gorge Application for Special Use

3  Permit for Base Landings.  (Doc. No. 18-2).

## APPLICABLE LAWS AND ANALYSIS

The Administrative Protection Act provides "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statue, is entitled to judicial review thereof." 5 U.S.C. § 702.  "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704.  Review of final agency action is governed by the "arbitrary or capricious" standard. 5 U.S.C. § 706(2)(A).  As elaborated by the Ninth Circuit,

> Review under the arbitrary and capricious standard is narrow and the reviewing court may not substitute its judgment for that of the agency. *Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 376, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989) (*Marsh*). We must determine whether the agency's decision was made after considering the relevant factors and whether the agency made a clear error of judgment. *Id.* at 378, 109 S.Ct. at 1861. We may reverse the agency's decision as arbitrary or capricious only if the agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, offered an explanation that ran counter to the evidence before the agency, or offered one that is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. *Dioxin/Organochlorine Center v. Clarke,* 57 F.3d 1517, 1521 (9th Cir. 1995).

*Western Radio Services Co., Inc. v. Espy,* 79 F.3d 896, 900 (9th Cir. 1996), *cert. denied,* 519 U.S. 822, 117 S.Ct. 80, 136 L.Ed.2d 38 (1996).  Under the APA, two conditions must be satisfied for an agency action to be considered final and reviewable: (1) the agency action cannot be tentative but be the "consummation of its decision-making process" and (2) the agency action must determine "the rights and obligation of the parties or is one from which legal consequences will flow." *Rattlesnake Coal v. U.S. EPA*., 509 F.3d 1095, 1103 (9th Cir. 2007) (citing *Bennet v. Spear*, 520 U.S. 154, 177-78 (1997).  Under the first prong, a final action must be a "definitive statement of the [agency's] position," *Ukiah Valley Med. Ctr. v. F.T.C.*, 911 F.2d 261, 264 (9th Cir. 1990), or the agency's "last word on the matter" at issue. *Oregon Nat. Desert Ass'n v. U.S.*

*Forest Serv.,* 465 F.3d 977, at 983-84 (9th Cir. 2006). *See also San Francisco Herring Ass'n v. Dep't of the Interior*, 946 F.3d 564, 580 (9th Cir. 2019). And "exposure to 'the risk of significant criminal and civil penalties' satisfies" the second prong. *Id*. The presence of final agency action is a jurisdictional requirement. *National Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1236 (11th Cir. 2003); *Pennsylvania Mun. Authorities Ass'n v. Horinko*, 292 F. Supp. 2d 95, 102 (D.D.C. 2003), *aff'd sub nom. Pennsylvania Mun. Authorities Ass'n v. Johnson*, No. 04-5073, 2005 WL 2491482 (D.C. Cir. June 3, 2005).

The Court first addresses Nunn's challenge to the implementing regulation and then considers his second challenge to the informal decision by NPS to ban BASE jumping in Yosemite.

**A.  Nunn's Challenge to Promulgating Regulation Fails**

Nunn's challenge to the promulgating regulation, 36 C.F.R. § 2.17, falls within the APA's notice and comment rulemaking provisions (5 U.S.C. § 553).

> The APA "sets forth the full extent of judicial authority to review executive agency action for procedural correctness." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 [] (2009). It "prescribes a three-step procedure for so-called 'notice-and-comment rulemaking.'" *Perez v. Mortg. Bankers Ass'n*, ––– U.S. –––, 135 S. Ct. 1199 [] (2015) (citing 5 U.S.C. § 553).
>
> First, a "[g]eneral notice of proposed rulemaking" must ordinarily be published in the Federal Register. 5 U.S.C. § 553(b).
>
> Second, provided that "notice [is] required," the agency must "give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments." *Id.* § 553(c). "An agency must consider and respond to significant comments received during the period for public comment." *Perez*, 135 S. Ct. at 1203.
>
> Third, the agency must incorporate in the final rule "a concise general statement of [its] basis and purpose." 5 U.S.C. § 553(c).

*Altera Corp. & Subsidiaries v. Comm'r of Internal Revenue*, 926 F.3d 1061, 1080 (9th Cir. 2019). As noted *supra*, Nunn challenges the promulgating regulation at step three.

The Court finds that Nunn's challenge to promulgating regulation fails because Nunn's claim is time-barred. Alternatively, the Court finds NPS's decision to include BASE jumping in the promulgating regulation was an interpretative rule not subject to the formal rule making

6

procedures.

### 1. Administrative Exhaustion and Statute of Limitations

The Government argues the Court need not address the merits of Nunn's motion because Nunn failed to first challenge the subject APA regulation administratively prior to raising it as an affirmative defense to his charged offense. (Doc. No. 27 at 4-8). "Under the APA, administrative exhaustion is required when it is mandated by statute or agency rule." *Conservation Force v. Salazar*, 919 F. Supp. 2d 85, 89 (D.D.C. 2013 (citing Darby v. Cisneros, 509 U.S. 137, 146 (1993)); *United States v. Backlund*, 689 F.3d 986 (9th Cir. 2012). Nunn denies there is an exhaustion remedy, and the Government has not pointed to a mechanism for Nunn to avail himself of to exhaust his administrative remedies. The Court's review of Part 2 of 36 Code of Federal Regulations finds no administrative scheme mandating exhaustion. The Ninth Circuit has cited to 5 U.S.C. § 553 (e)[4] as providing an aggrieved party with the ability to file a complaint with the agency prior to challenging final agency action. *San Francisco Herring Ass'n v. U.S. Dep't of Interior*, 683 F. App'x 579, 581 (9th Cir. 2017). The Court need not determine the applicability of exhaustion here, because Nunn's challenge to the promulgating regulation is otherwise barred.

The Government next argues that the APA's statute of limitations has run on Nunn's challenge to the sufficiency of the rulemaking record,[5] and arguably on NPS' informal decision to ban BASE jumping in Yosemite. (Doc. No. 27 at 8; Doc. No. 39 at 3; Doc. No. 54 at 29). Specifically, the Government submits that the statute of limitations set forth in 28 U.S.C. § 2401(a) applies to Nunn's APA challenge to the regulation. (Doc. No. 39 at 3). The Court agrees that Nunn's challenge to the promulgating regulation is time-barred.

Because the APA does not contain a specific statute of limitations, courts who have considered challenges to a regulation under the APA have adopted the six-year general civil

---

[4] "Each agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule." *Id.*

[5] The Government has suggested that Nunn may be barred from asserting the APA defense because he did not raise it in a prior prosecution to a citation for BASE jumping. In its current form, this argument is an extension of the Government's position that Nunn's APA affirmative defense is barred by the statute of limitations.

action statute of limitations contains in 28 U.S.C. § 2401(a).  *See Sierra Club v. Penfold,* 857 F.2d 1307, 1315 (9th Cir.1988) (finding 28 U.S.C. § 2401(a) applies "to actions brought under the APA which challenge a regulation on the basis of a procedural irregularity").  While this is a criminal proceeding, the crux of the Government's argument—to the extent any challenge exists—is that Nunn's challenge is rooted in the APA and the APA is a civil statute.  In the civil context, "the right of action on a procedural challenge to an agency's decision accrues on the date the decision is rendered."  *Idaho Mining Ass'n, Inc. v. Browner*, 90 F. Supp. 2d 1078, 1093 (D. Idaho 2000) (citing *Wind River Mining Corp. v. United States,* 946 F.2d 710, 715 (9th Cir. 1991) ("The government's interest in finality outweighs a late-comer's desire to protest the agency's action as a matter of policy or procedure.").  Under Ninth Circuit precedent, a claim seeking to challenge a regulation under the APA accrues, and the statute of limitations begins to run, when an agency publishes a regulation.  *Shiny Rock Min. Corp. v. United States*, 906 F.2d 1362, 1363 (9th Cir. 1990) ("Publication in the Federal Register is legally sufficient notice to all interested or affected person regardless of actual knowledge or hardship resulting from ignorance," and declining "to accept the suggestion that standing to sue is a prerequisite to the running of the limitations period" because "[t]o hold otherwise would render the limitation on challenges to agency orders we adopted ... meaningless").

     Nunn suggests that applying the six-year statute of limitations to preclude his challenge to a regulation in his criminal case raises due process concerns.  (Doc. No. 36 at 7).  In support, Nunn refers the Court to Justice Powell's concurrence in *Adamo Wrecking Co. v. United States*, 434 U.S. 275, 289, 98 S. Ct. 566, 575, 54 L. Ed. 2d 538 (1978).  The Court finds Nunn's due process argument unconvincing considering he previously was charged with the same offense in 1998.  Clearly, Nunn knew of his injury at this time.  *See Worthington v. Off. of Nat'l Drug Control Pol'y*, No. CV 19-0081 (ABJ), 2020 WL 1509167, at *7 (D.D.C. Mar. 30, 2020*), aff'd sub nom.* No. 20-5113, 2020 WL 9311952 (D.C. Cir. Nov. 12, 2020).  In *Worthington*, plaintiff filed a thirteen-count complaint stemming from a raid of his home and seizure of marijuana plants raising various claims, including APA and due process claims.  In addressing the APA's six-year statute of limitations as a bar to plaintiff's claim, the D.C. Circuit noted, plaintiff's "constitutional

8

claims fare no better.  'Under the discovery rule, a cause of action accrues when the injured party discovers – or in the exercise of due diligence should have discovered – that it has been injured.'" *Id*. (citing *Hardin*, 625 F.3d at 743 (D.C. Cir. 2010), quoting *Nat'l Treasury Emps. Union v. FLRA*, 392 F.3d 498, 501 (D.C. Cir. 2004)).

Based on binding Ninth Circuit precedent,[6] the Court finds that Nunn's procedural challenge to the promulgating regulation is time barred.  To hold that a procedural challenge is not subject to any statute of limitations when raised as an affirmative defense in a criminal proceeding would mean that a defendant may challenge rulemaking procedures under the APA at any time, and in the case sub judice, over 40 years after the subject regulation was published.

### 2. BASE Jumping is an Interpretive Rule

In its supplemental brief, the Government argues in the alternative that NPS's application of 36 C.F.R. § 2.17 to BASE jumping is an "interpretive rule," which is exempt from separate notice and comment.  (Doc. No. 39 at 2-3).  The Court agrees.

An agency must abide by the procedural requirements set forth in the APA when it seeks to issue a rule; however, "[t]hose requirements **do not apply** to 'interpretative rules, general statements of policy, or rules of agency organization, procedures, or practice.'" *Lane v. Salazar*, 911 F.3d 942, 949 (9th Cir. 2018) (emphasis added) (quoting 5 U.S.C. § 553(b)); *Alpha Servs., LLC v. Perez*, 681 F. App'x 584, 586 (9th Cir. 2017) (citing *Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1206 (2015)); *Miller v. Cal. Speedway Corp*., 536 F.3d 1020, 1033 (9th Cir. 2008).

Generally, "agencies issue interpretative rules to clarify or explain existing law or regulations so as to advise the public of the agency's construction of the rules it administers." *Gunderson v. Hood*, 268 F.3d 1149, 1154 (9th Cir. 2001) (citations omitted); *see also Evans v. Martin*, 496 Fed. Appx. 442, 443 (5th Cir. 2012) ("Generally speaking, it seems to be established

---

[6] As to when an action accrues, the Supreme Court recently granted certiorari to determine if a plaintiffs APA claim "first accrues" under 28 U.S.C. § 401(a) when an agency issues a rule - regardless of whether that rule injures the plaintiff on that date (as the Eighth Circuit and five other circuits, including the Ninth have held) - or when the rule first causes a plaintiff to "suffer legal wrong" or be "adversely affected or aggrieved" (as the Sixth Circuit has held).  *North Dakota Retail Association v. Board of Governors of the Federal Reserve System*, C.A.8 (N.D.) 2022, 55 F.4th 634, *cert. granted*, 2023 WL 6319653 (Mem), 216 L.Ed.2d 1312 (2023).

that regulations, substantive rules, or legislative rules are those which create law, usually implementary to an existing law; whereas interpretative rules are statements as to what the administrative officer thinks the statute or regulation means.") (quoting *Shell Offshore Inc. v. Babbitt*, 238 F.3d 622, 628 (5th Cir. 2001) (citation omitted)).  And the APA's rulemaking provisions do not apply "to interpretive rules, general statements of policy, or rules of agency organization, procedure or practice," unless a notice or hearing is required by statute.[7]  5 U.S.C. 553(b).

A rule is not interpretative if it is inconsistent with or amends an existing legislative rule. *See also U.S. v. Picciotto*, 875 F.2d 345, 347-48 (D.D.C. 1989) (reversing conviction and dismissing citation finding Park Service's imposition of "additional conditions" to the public was not interpretive but instead was "an independent substantive rule" and subject to APA's notice and comment requirements).

Here, Nunn's challenge to the regulation fails because NPS's interpretation that the language of 36 C.F.R. § 2.17 includes BASE jumping is interpretive; and thus, is not subject to notice and comment rulemaking.  In *United States v. Albers*. 226 F.3d 989 (9th Cir. 2000), *cert denied*, 531 U.S. 1114 (2001), the Ninth Circuit held that despite technological advancements, the "chutes" used in a BASE jump qualified as parachutes, and, as a result, BASE jumping was prohibited by § 2.17(a)(3).  *Albers*, 226 F.3d at 993-94.  Furthermore, the Ninth Circuit explained that while "BASE jumping under § 2.17(a)(3) is not the most organic fit," the court will give deference to the agency's interpretation of its regulation.  *Id*.  Ultimately, in *Albers*, by giving deference to NPS's interpretation of the regulation, the Ninth Circuit held that not only was § 2.17(a)(3), as it applied to BASE jumping, an interpretative rule, but it was also appropriately applied.  *See id*. (citing *United States v. Oxx*, 127 F.3d 1277, 1279 (10th Cir. 1997)).  An agency's interpretation of its own regulations "must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (internal quotations and citations omitted).

---

[7] The rulemaking provisions do not apply "to the extent that there is involved . . . a matter relating to . . . public property."  5 U.S.C. § 553(a)(2).  Neither party addresses the public property exemption.

10

Consequently, NPS's interpretation that § 2.17(a)(3) use of the term "parachute" includes BASE jumping, as an interpretive rule, is exempt from the APA's procedural requirements of separate notice and comment. *See Lane*, 911 F.3d at 949; *Alpha Servs., LLC*, 681 F. App'x 584 (citation omitted); *Miller*, 536 F.3d 1020; *Albers*, 226 F.3d at 993-94.[8] Thus, Nunn's argument that the regulation is arbitrary and capricious because it did not follow the procedural requirements of the APA to support with sufficient analysis, fails on the merits.

**B. Nunn's Challenge to NPS's Decision to Ban BASE Jumping in Yosemite**

Nunn's second challenge is that NPS's informal decision to ban on all BASE jumping in Yosemite is arbitrary and capricious.[9] This argument rests on then head ranger Wendt's decision to summarily end the permit system sometime in the early 1980s. Critical to this challenge is a showing that the permitting process for BASE jumping in Yosemite has been eliminated. In argument, Nunn suggests that applying for a permit would be futile and points to the decades long enforcement against BASE jumping as evidence that no permitting system existed. Nunn further acknowledges that there is an absence of an administrative record or any documentation concerning Wendt's decision to withdraw the permitting system. Significantly, Nunn does not allege that he attempted to apply for an individual or special use permit and was told that there was no permitting process available. And while Nunn refers the Court to special use permits granted to hang gliders, Nunn does not allege that the BASE jumping community submitted

---

[8] The Ninth Circuit also found in *Albers* that NPS correctly followed the APA with § 2.17(a)(3) therefore directly refuting Nunn's argument that "the regulation which prohibits delivery of a person by parachute is arbitrary and capricious" because the regulation is not supported by sufficient analysis. *Id.*, 226 F. 3d 989 at 993-94 ("In 1975, the Department of Interior proposed a definition of powerless flight which included the 'launching or landing of recreational gliders, sailplanes, *parachutes*, body kites, hang gliders, and other devices designed to carry persons or objects through the air…' 40 Fed. Reg. 36,378 (1975) (emphasis added). The final regulation, however, omitted reference to parachutes. *See* 40 Fed. Reg. 57,695 (1975); *see also* 48 Fed Reg. 30,268 (1983). We defer to the agency's interpretation of this omission and read the final regulation as excluding parachutes from the category of powerless flight devices."). As the Ninth Circuit demonstrated in *Albers*, NPS did go through proper notice-and-comment procedures and did undertake a proper analysis to determine if and where "**parachute**" should appear in the final regulation. Deference is given to agency's interpretation of its regulations. *Albers*, 226 F.3d at 993-94.

[9] Although Nunn challenges the withdrawal of the permitting process as arbitrary and capricious, an agency's complete removal of the permitting process otherwise permitted under the regulation may trigger the notice and opportunity for comment mandates of the APA. *See Env't Def. Fund, Inc. v. Gorsuch*, 713 F.2d 802, 818 (D.C. Cir. 1983).

similar special use permits which were either denied or returned without comment to imply that no such permitting process was available.

During argument, the Government maintained that Nunn's challenge to the de facto rule implemented by chief ranger was subject to the same six-year limitation and thus would be time-barred. The Court agrees. To the extent that Wendt's decision in the 1980s constitutes final agency action, Nunn's challenge to this final agency action would-be time barred under the six-year applicable statute of limitations whether the Court deemed the challenge as procedural or whether the Court considered Wendt's withdrawal of the permitting process as exceeding statutory authority. *Wind River Min. Corp.*, 946 F.2d at 712. A policy-based, facial claim contesting the validity of an agency rule or a claim challenging the procedures used in adopting the rule must be brought within six years of the rule's adoption. *Id.* at 715. A claim that an agency decision exceeds statutory or constitutional authority "must be brought within six years of the agency's application of the disputed decision to the challenger." *Id.* at 715-16 (emphasis added). As clarified by the Ninth Circuit in California *Sea Urchin Commission v. Bean*, 828 F.3d 1046, 1049-50 (9th Cir. 2016), under *Wind River*, an injured party may challenge final agency action that exceeds an agency's authority within six years after being injured by the action that exceeded its statutory authority. Unique here is that Nunn's injury from this final agency action (removal of the permitting process if challenged as exceeding agency statutory authority) would have been apparent at the latest in 1998, when Nunn was previously charged with the same offense.

The Court, however, is not convinced that the de facto rule espoused by head park ranger, Bill Wendt sometime in the 1980s constitutes final agency action. In pertinent part, "rule" "means the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy. . ." 5 U.S.C.A. § 551 (4). "Agency" action includes the "whole or part of an agency, rule, order, license, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). By Nunn's own admission Wendt's decision was made unilaterally based on his personal animus and was not formally published. Unlike in *San Francisco Herring Ass'n v. Dep't of the Interior*, 946 F.3d 564, 567 (9th

12

Cir. 2019) where the Park Service issued "a series of formal written notices to herring fisherman," "announced" that "such fishing was prohibited," indicated it would enforce a violation, and orally "reiterated its position and refused to change it," here Nunn offers no evidence that NPS issued any formal written notices or announcements that the permitting process for BASE jumping was withdrawn. Indeed, as discussed below, the fact that the Superintendent's Compendium still contains a provision recognizing the permitting process for BASE jumping suggests that Wendt's informal decision was not adopted by the agency.

Significant, the express language of 36 C.F.R. § 2.17(a)(3) identifies a permit as an exception to the regulation's prohibition, "[d]elivering or retrieving a person or objection by parachute, helicopter, or other airborne means" is prohibited, *except pursuant to the terms and conditions of a permit*. And consistent with 36 C.F.R. § 1.6(f),[10] the Superintendent's Compendium recognizes that a permitting process is available for BASE jumping stating, in pertinent part:

> 36 C.F.R.-ACTIVITIES THAT REQUIRE A PERMIT
>
> (f) The following is a compilation of those activities for which require a permit from the superintendent:
>
> § 2.17 Aircraft & Air Delivery
>
> (a)(3) Delivery or retrieval of person or object by parachute, helicopter or other airborne means.

Cicely Muldon, *Superintendents' Compendium* 22 (2020), pp 21, 36. *See also United States v. Carey*, 929 F.3d 1092, 1095 (9th Cir. 2019) (permit to BASE jump is an affirmative defense on which defendant bears the burden of proof).

The permitting process is critical because it provides "a meaningful standard against which to judge the agency's exercise of discretion" because the denial of a permit is not one of "those rare administrative decisions traditionally left to agency discretion" but is subject to the arbitrary and capacious standard. *Noem v. Haaland*, 542 F. Supp. 3d 898, 913 (D.S.D. 2021) (citing *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, ___ U.S. ___, 140 S.C. at 1891, 1905

---

[10] "A compilation of those activities requiring a permit shall be maintained by the superintendent and available to the public upon request." *Id.*

(2020)). Specifically, when the regulations authorize a permit, as does 36 C.F.R. § 2.17(c)(3),

> [T]he superintendent may issue a permit to authorize an otherwise prohibited or restricted activity or impose a public use limit. The activity authorized by a permit shall be consistent with applicable legislation, Federal regulations and administrative policies, and based upon a determination that public health and safety, environmental or scenic values, natural or cultural resources, scientific research, implementation of management responsibilities, proper allocation and use of facilities, or the avoidance of conflict among visitor use activities will not be adversely impacted.

36 C.F.R. § 1.6(a). And pertinent here, the superintendent's "shall deny" a properly applied for permit "only upon a determination . . . one or more of the factors set forth in paragraph (a) of this section would be adversely impacted." 36 C.F.R. § 1.6(d). Certainly, the permitting process consitutes formal agency action and it forms the basis of the arbitrary and capricious challenge under the APA. *Noem*, 542 F. Supp. 3d at 915; *John Doe, Inc. v. Drug Enf't Admin.*, 484 F.3d 561, 565 (D.C. Cir. 2007).

Reciprocally, the failure to apply for a permit, when one is required, deprives the Court of jurisdiction because there is no final agency action to review. *Hale v. Norton*, 437 F.3d 892, 893 (9th Cir. 2006). Here, there appears to be no dispute that Nunn did not seek a permit to BASE jump. In briefing, Nunn asserted that "there is no mechanism to apply for permission to BASE jump." (Doc. No. 28 at 10; *see also id.* at 4:17-22). At the hearing on this motion, Nunn professed to have not been aware of any permitting process and suggested that lack of notice may excuse a failure to seek a permit. The Court is not persuaded. *See United States v. Carey*, 929 F.3d 1092, 1103 (9th Cir. 2019) (holding "§ 2.17(a)(3)'s permit exception is best understood as an affirmative defense" upon which the defendant bears the "burden of proof at trial.").

In apparent contradiction to the Superintendent's Compendium, the NPS Yosemite website contains language that implies that BASE jumping is banned without explanation.[11]

---

[11] Specifically, the website contains the following notice:

**Air Delivery and Unmanned Aircraft**

**BASE jumping** is prohibited. Hang gliding is allowed with a permit.

Launching, landing, or operating an unmanned aircraft from or on lands

Notably, the website's statement that hang gliding is permitted with a permit is consistent with 36 C.F.R. § 7.16(c),[12] but no similar flat prohibition appears for BASE jumping in § 7.16, like it does for motorboats. *See* § 7.16(i). While the Court may take judicial notice of a government website, *Daniels-Hall V. National Education Assoc.*, 626 F. 3d 992, 999 (9th Cir. 2010), the Court need not accept the contents of the website as true. *Farrell v. Boeing Emps. Credit Union*, No. 16-CV-02711 NC, 2017 WL 1508993, at *3 (N.D. Cal. Apr. 26, 2017), *aff'd in part on other grounds, vacated in part on other grounds, remanded*, 761 F. App'x 682 (9th Cir. 2019) (taking judicial notice the Defense Finance and Accounting Service's website, but declining to notice that the contents of the website were true).

Here, neither party has argued the relevance of the statement on the website and the statement raises additional issues the Court need not decide at this time.[13] Based on the record,

---

> and waters administered by the National Park Service within the boundaries of Yosemite National Park is prohibited. Unmanned aircraft includes (but is not limited to) model airplanes, quadcopters, and drones. The park will not issue permits for Unmanned Aircraft System (UAS), or drones, use in Yosemite National Park.
>
> This restriction is to protect the public from hazards and preserve the park's natural, aesthetic, and scenic values. The use of machine airborne or controlled devices, such as unmanned aircraft systems (UAS) or drones, has the potential to interfere with public safety by posing an in-flight hazard to emergency helicopter use in the park. The use of these devices also has the potential to disrupt wildlife by interrupting migration, nesting, mating, and hunting activities to include, but not limited to, protected species such as the peregrine Falcon. This restriction is in accordance with NPS Management Policy 8.2, which prohibits recreational uses that conflict with the scenic values and view sheds that the park was designated to protect and the associated activities in which individuals seek solitude and tranquility with an expectation of privacy. Furthermore, the use in designated Wilderness areas violates the Wilderness Act, which prohibits motorized equipment. An interim measure may be put into place at a later date after the park administration evaluates the appropriateness of this new use on a long-term basis.

https://www.nps.gov/yose/planyourvisit/safety.htm (emphasis in original).

[12] 36 C.F.R. § 716 provides:

> (c) *Powerless flight*. The use of devices designed to carry persons through the air in powerless flight is allowed at times and locations designated by the superintendent, pursuant to the terms and conditions of a permit.

[13] In addition to determining the truth of the statement, when the statement was posted on the website and whether the statement on the website is considered final agency action would need to be considered by the

the Court has no evidence that a permitting process was not otherwise available for BASE jumpers in Yosemite at the time Nunn was charged. Consequently, the Court finds fatal to Nunn's second challenge his inability to show a denial of his application for a permit. While the Government also argues that Nunn failed to exhaust his administrative remedies regarding his second challenge, the Government was not able to point to any appeal process for Nunn, assuming he had applied for a permit. A review of Subpart 1 and Subpart 2 to Title 36 of the Code of Federal Regulations—the subparts governing permits and the challenged regulation—contain no appeal process. Other court have concluded that no appeal process past the denial of a permit exists under either of these subparts. *See S. Forest Watch, Inc. v. Jewell*, No. 3:13-cv-116-JMH-HBG, 2014 WL 1207734, at * 8 n. 1 (E.D. Tenn. March 24, 2014) (noting that plaintiffs were not required to exhaust administrative remedies challenging NPS online permit system because neither statute nor regulations at issue require exhaustion); *Noem*, 542 F. Supp. 3d at 914 (finding "[t]hat NPS has not set forth an appeal process indicates that the denial itself is meant to be a final agency action."). In the alternative, Nunn's challenge to Wendt's decision to remove permits in the 1980s, to the extent it constituted final agency action, would be time barred.

**C. Motion for Evidentiary Hearing**

The Court has broad discretion as to whether to hold an evidentiary hearing. *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986). "Absent materiality and inconsistency, no evidentiary hearing need be held." *United States v. Moran-Garcia*, 783 F. Supp. 1266, 1269 (S.D. Cal. 1991). Even if an issue is in dispute, an evidentiary hearing is not necessary "unless the resolution of that dispute may make a material difference in the Court's consideration of the underlying motion." *Id*. at 1271.

Here the Court finds Nunn's first challenge to the promulgating regulation is time barred or subject to dismissal because NPS' interpretative rule that the subject regulation encompasses BASE jumping is not subject to APA's rulemaking and comment mandates. The Court finds

---

Court. This former issue was recently certified to the Ninth Circuit in a related context in *Allison Ottesen, et al. v. Hi-Tech Pharmaceuticals, Inc.*, No. 19-CV-07271-JST, 2024 WL 589089, at *3 (N.D. Cal. Feb. 13, 2024) (certifying "whether statements posted to an agency's website constitute 'final agency action'").

16

Nunn's second challenge does not constitute final agency action, or alternatively in Nunn's case is likewise time barred.  Alternatively, the Court further finds Nunn's failure to apply for a permit is fatal to his claim because without a denial to a permit there is no final agency action.

Consequently, the Court finds no reason to grant an evidentiary hearing under the facts of this case.

Accordingly, it is **ORDERED**:

1. Defendant's motion to dismiss count two (Doc. No. 18) is DENIED.
2. Defendant's motion for evidentiary hearing (Doc. No. 49) is DENIED.
3. The court sets this case for a status conference for **Tuesday, April 9, 2024, at 10:00 A.M.**
4. The Court shall LIFT the STAYS in the following cases:  *U.S. v. Madl*, 6:20-mj-00015; *U.S. v. Brokemond*, 6:21-po-00150; and *U.S. v. Hennage*, 6:21-po-00162 and set each case for an appropriate hearing for **Tuesday, April 9, 2024, at 1:00 P.M**. in Yosemite.
5. Within seven (7) days of the date on this Order, the Government shall advise the Court of any other actions, other than those identified above, that were stayed pending consideration of this Motion.

Dated:     February 27, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE