HEATHER E. WILLIAMS, CA Bar #122664
Federal Defender
KARA R. OTTERVANGER, CA Bar # 354424
Assistant Federal Defender
Kara_Ottervanger@fd.org
2300 Tulare Street, Suite 330
Fresno, CA 93721-2226
Telephone: (559) 487-5561
BENJAMIN A. GERSON, NY Bar # 5505144
Assistant Federal Defender
Benjamin_Gerson@fd.org
411 E. Bonneville Ave. Suite 250
Las Vegas, NV 89101
Telephone: (702) 388-6577

Attorneys for Defendant
DAVID NUNN

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>DAVID NUNN<br><br>    Defendant. | Case No. 6:20-PO-00742-HBK<br><br>REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO RECONSIDER MOTION TO DISMISS |

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    Introduction**

The government argues that even if time bars previously imposed by 28 U.S.C. § 2401 are invalidated by *Corner Post Inc. v. Board of Governors of the Federal Reserve System*, 603 U.S. ___, 144 S. Ct. 2440 (2024), independent reasons stated in this Court's Order exist to deny Mr. Nunn's motion to dismiss. Because this Court may now reach the merits of Mr. Nunn's claim, he respectfully moves this court to reconsider the remaining reasons for denial in the context of a merits decision.

The government further argues that *Loper Bright v. Enterprises v. Raimondo*, 603 U.S. ___, 144 S. Ct. 2244 (2024) is not applicable to this case because, here, the Court is reviewing the agency's interpretation of its own regulation, as opposed to its interpretation of a statute. This is a distinction without a difference under 5 U.S.C. § 706, which directs a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be … not in accordance with law." *Loper Bright*, 144 S. Ct. 261, quoting § 706(2)(A). Accordingly, *Loper Bright* controls here.

## II. Argument

### A. The question of whether Yosemite's ban on BASE jumping is a final agency action is intertwined with the merits of the case.

Mr. Nunn challenged the validity of the decision to ban BASE jumping as arbitrary and capricious informal adjudication. *See Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971). The government, in its Response to Defendant's Motion for Reconsideration (Response), points to this Court's reasoning that the decision to ban BASE jumping was not final agency action. Response at 4. The crux of this Court's reasoning rests on the apparent dissonance between Ranger Wendt's ban on BASE jumping, and the residual authority that a permitting process exists, as stated in the Superintendent's Compendium. Order at 12–13. Mr. Nunn has long argued that while a permit may hypothetically be available, as stated in the Compendium, the reality is that no permit for BASE jumping will ever be issued. This has been common knowledge in the BASE jumping community for decades. Mr. Nunn has now adduced evidence of the National Park Service's *nationwide* ban on BASE jumping by denying all permit applications in all instances. *See* Motion for Reconsideration Ex. A. Ranger Wendt's animus may have originated as personal dislike directed at a few parachutists he hoped to discourage, but over years it took root in the management culture of Yosemite, and spread to other national parks nationally. The blanket ban on BASE jumping by erecting insurmountable and pretextual permitting processes across the national park system cannot be considered anything less than final agency action, even if it is not explicitly published. *Cf. San Francisco Herring Ass'n v. Dep't of the Interior*, 946 F.3d 564, 567 (9th Cir. 2019).

The question of whether there is an unpublished, yet widely understood ban on BASE jumping is closely intertwined with the question of whether the decision to ban BASE jumping is arbitrary and capricious. An unpublished ban is by definition arbitrary and capricious. If, in examining the record, this Court finds that permits are not, in fact, available to BASE jumpers, then it must also find that the decision to ban BASE jumping was arbitrary and capricious. Because Mr. Nunn's claim is no longer time barred this Court should now consider the evidentiary record as presented by Mr. Nunn to answer both questions.

### B. Mr. Nunn's claim is not time-barred based on his prior conviction.

The government argues that Mr. Nunn's prior conviction for BASE jumping bars any claim to relief now, even though his case is not final and he is entitled to the retroactive application of *Corner Post*. Response at 6. The core of the government's argument is that Mr. Nunn could have asserted his claim in 1998, even though no right existed at the time. *Id.* The government assumes that the challenge can only be brought once, and if the court were to adopt that view it would implicate significant due process rights for criminal defendants. In the government's view, Mr. Nunn could have asserted an APA challenge in 1998, despite the fact that relief was unlikely. Had his challenge been denied in 1998, would he be forever barred from raising the challenge in a subsequent BASE jumping case, even when the controlling law changed? He certainly could not reopen the issue based on the 1998 conviction, as it would have been final. The result is absurd.

In any criminal prosecution, the defendant is entitled to raise any and all defenses, even if they have a low probability of being meritorious, without precluding those defenses in a subsequent case. A defendant is also entitled to retroactive application of changes in the law before a case is final. *Teague v. Lane*, 489 U.S. 288, 304–305 (1989). The government cites only an order which is not binding upon this Court to support their proposition. Response at 5–6. Indeed, closer examination reveals that the Eastern District of Virginia supplied only conclusory language without analysis as to whether a subsequent challenge may be brought.

Finally, the government relies on a *civil* case, ignoring the key distinction that Mr. Nunn's rights as a criminal defendant are markedly different. The Supreme Court, in *Corner Post*, made clear that the statute of limitations runs from the time the right accrues. *See* Motion at 3, 5; *see*

*also California v. FERC*, 495 U.S. 490, 499 (1990) (requiring judicial adherence to prior decisions which interpret statutes). Mr. Nunn's current injury occurred in 2020, and that is when his current right to challenge the regulation as part of his defense strategy, and thus the statute of limitations, began.

### C. *Loper Bright* undermines this Court's deference to the National Park Service's interpretation of 36 C.F.R. § 2.17.

The government argues that *Loper Bright v. Enterprises v. Raimondo*, 603 U.S. ___, 144 S. Ct. 2244 (2024) is not applicable to this case because, here, the Court is reviewing the agency's interpretation of its own regulation, as opposed to its interpretation of a statute. Response at 6-7. This is incorrect.

The ability of an agency to promulgate rules (regulations) in the first place stems from Congress's statutory grant of power to do so. Administrative Procedures Act ("APA") rulemaking statute, enacted September 6, 1966. Pub. L. 89-554, Sept. 6, 1966, 5 U.S.C. § 553.[1] When an agency interprets the rule or regulation it has made, it is necessarily interpreting the scope of the statute that gave it the power to promulgate that rule or regulation in the first place. An agency may not promulgate an unlawful regulation, or interpret an otherwise lawful regulation in an unlawful way, and be shielded from review.[2] 5 U.S.C. § 706(2); *Corner Post, Inc. v. Bd, of Gov. Fed. Reserve Sys.*, 603 U.S. ___, 144 S. Ct. 2440, 2460 (2024) (Kavanaugh, J, concurring) ("The Federal Government and the federal courts have long understood § 706(2) to authorize the vacatur of unlawful agency rules …"). Indeed, "[c]ourts must exercise their independent judgment in deciding *whether an agency has acted within its statutory authority* …" in promulgating and enforcing a regulation. *Loper Bright*, 144 S. Ct. at 2273 (emphasis added).

---

[1] *See also, e.g.*, A Guide to Rulemaking Process, Prepared by the Office of the Federal Register, available at https://www.federalregister.gov/uploads/2011/01/the_rulemaking_process.pdf (last visited December 6, 2024) ("Agencies get their authority to issue regulations from laws (statutes) enacted by Congress.").

[2] *See, e.g.*, A Guide to Rulemaking Process, Prepared by the Office of the Federal Register, available at https://www.federalregister.gov/uploads/2011/01/the_rulemaking_process.pdf (last visited December 6, 2024) ("An agency must not take action that goes beyond its statutory authority or violates the Constitution").

The ultimate conclusion of the United States Supreme Court in *Loper Bright* is that courts may not be relieved of their independent obligation to interpret the law. 144 S. Ct. at 2266. "When the best reading of a statute is that it delegates discretionary authority to an agency, the role of the reviewing court under the APA is, as always, to independently interpret the statute and effectuate the will of congress subject to constitutional limits." *Loper Bright*, 144 CS. Ct. at 2263. The court "fulfills that role by ensuring the agency has engaged in reasoned decision making within those boundaries." *Id*. (internal citations omitted). *Chevron*[3] vested power in the agency, first and foremost, to interpret "ambiguity in a statute meant for interpretation by an agency," which is what the National Park Service does when it implements 5 U.S.C. § 553 by promulgating rules and regulations. The agency's very power to do so stems from that statute.

Even if this Court were to adopt the government's argument that *Cheron* itself, and the abrogation of that doctrine, applies only to an agency's interpretation of the statute itself, rather than the regulation it promulgates pursuant to that statutory authority, the ruling in *Loper Bright* still applies. The Supreme Court made clear in *Loper Bright* that "agencies have no special competence in resolving [] ambiguities. Courts do." 144 S. Ct. at 2266. This applies equally to "interpretive issues arising in connection with a regulatory scheme." *Id*. at 2267. The Supreme Court has held that interpreting an agency's regulation falls "'more naturally into the judge's bailiwick than an agency's.'" *Id*. (quoting *Kisor v. Wilkie*, 588 U.S. 558, 578 (2019)). And the Supreme Court made clear that even when rulemaking processes are used, "deference is still not warranted where the regulation is procedurally defective—that is, where the agency errs by failing to follow the correct procedures in issuing the regulation." *Loper Bright*, 144 S. Ct. at 2268 (internal citations omitted).

This issue is not waived, as Mr. Nunn has argued from the start that the agency's actions were improper. The Court's deference to the agency in its February 27, 2024, Order, has been undermined by the *Loper Bright* decision, and as such is properly raised in a motion to reconsider.

---

[3] *Chevron, U.S.A., Inc. vs. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), overruled by *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024).

### III. Conclusion

For the aforementioned reasons, this court should grant Mr. Nunn's motion to dismiss, or in the alternative order an evidentiary hearing.

Dated this 6th day of December, 2024.

Respectfully submitted,

Heather E. Williams
Federal Public Defender

/s/Kara R. Ottervanger
Kara R. Ottervanger
Assistant Federal Public Defender

/s/ Benjamin A. Gerson
Benjamin A. Gerson
Assistant Federal Public Defender